**Brenda J. HAMER, Appellant,**

v.

**CAREER COLLEGE ASSOCIATION, Defendant–Appellee.**

No. 91–55793.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 8, 1992.

Decided Nov. 10, 1992.

Brenda J. Hamer, Oubre, Moss & Mc-Donald, Los Angeles, Cal., for appellant.

Ralph F. Hirschmann, Los Angeles, Cal., for defendant-appellee.

Before: FEINBERG,* GOODWIN and SCHROEDER, Circuit Judges.

SCHROEDER, Circuit Judge:

This is an appeal by an attorney from the imposition of Rule 11 sanctions arising out of her representation of a minority-owned trade school. The school had been denied accreditation, on financial grounds, by the defendant accreditation agency, Career College Association, which was then known as the National Association of Trade and Technical Schools ("NATTS"). The complaint alleged claims of breach of contract, economic loss as well as damages for personal injuries.

* Honorable Wilfred Feinberg, Senior United States Circuit Judge for the Second Circuit, sitting by designation.

breach of fiduciary duty, interference with advantageous business relationships, breach of the implied covenant of good faith and fair dealing and denial of due process. In assessing sanctions against the attorney, Brenda Hamer, the district court expressly found that most of the claims alleged in the complaint were non-frivolous. The district court focused exclusively upon what it interpreted to be a factually unfounded claim of racial discrimination underlying the due process claim. Its interpretation was based in large part on appellant's statements in response to the court's questioning at an oral hearing.

 Sanctions under the 1983 amendments to Rule 11 should be based upon the attorney's signed "pleading, motion, or other paper." The signature constitutes a certification that the contents of the filing are not frivolous and are based upon reasonable inquiry. The district court should assess the attorney's conduct in light of "the situation which existed when the paper was filed." *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1536 (9th Cir.1986); *see also Cunningham v. County of Los Angeles*, 879 F.2d 481, 490 (9th Cir.1988), *cert. denied*, 493 U.S. 1035, 110 S.Ct. 757, 107 L.Ed.2d 773 (1990). In this case we must reverse the imposition of sanctions because the complaint contained no factually unsupported claim of racial bias. We need not reach the question of whether an unfounded claim of racial discrimination in an otherwise non-frivolous lawsuit would have been subject to Rule 11 sanctions, since the attorney did not file such a claim of racial discrimination.

The portion of the complaint with which the district court was concerned alleged as follows:

16. During the January 17, 1991 appeal proceedings, the "Appeals Panel" made irrelevant, immaterial, prejudicial remarks concerning the school.[2] It became clear that the members of the Appeals Panel had prejudged Golden State School—generally—and its President, Larry Owens—particularly.

\* \* \* \* \* \*

[2] It should be pointed out that the President of Golden State School is Black. It should be further pointed out that of the hundreds of NATTS-accredited schools, less than 1% are Black.

The allegations in footnote two that the president of the plaintiff Golden State School is Black, and that fewer than one percent of the hundreds of NATTS-accredited schools are Black, are both, insofar as this record reflects, correct statements; their factual accuracy has not been challenged. The statements in the body of paragraph sixteen that the panel made prejudicial remarks during the appeal proceedings, and that the panel appeared to have prejudged the case, were supported by an affidavit of the school's president which was attached to the plaintiff's application for a temporary restraining order and a preliminary injunction.

The district court disagreed with the affidavit based upon its review of the transcript of the proceeding, which was also an exhibit to the plaintiff's motion. However, a cold transcript cannot alone be conclusive evidence of the attitude displayed by participants in a hearing. *See Gomez v. United States*, 490 U.S. 858, 874–75, 109 S.Ct. 2237, 2246–47, 104 L.Ed.2d 923 (1989) (transcripts cannot capture the atmosphere of *voir dire*, or the gestures and attitudes of prospective jurors); *Boone v. United States*, 944 F.2d 1489, 1496 (9th Cir.1991) (upholding district court's ruling that bias could not be discerned from a transcript).

 Equally important, the attorney was relying upon the declaration of her client, made "under penalty of perjury." Such an affidavit should be sufficient to constitute reasonable investigation for purposes of Rule 11 in a case such as this one, where the exigencies of a temporary restraining order require immediate action by counsel. In *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1364 (9th Cir.1991) (en banc), we emphasized the need to evaluate the lawyer's investigation in light of the totality of the circumstances, and suggested that good faith reliance upon statements of a client ought to be sufficient in the early stages of litigation.

From the district court's order and the transcript of the colloquy between the

court and appellant during the hearing on appellant's application for a preliminary injunction, it is apparent that the real focus of the district court's dissatisfaction with counsel's conduct was her reliance upon certain evidence of NATTS' treatment of another school. That evidence suggested that a White-owned trade school, which was originally affiliated with her client's school prior to his acquisition of Golden State, was bankrupt and yet had been accredited by defendants. The district court concluded that the plaintiff's counsel was making a frivolous claim of racial prejudice based on an unsupported assertion that another school had been treated differently from her client on account of race. The district court took issue with such characterization because the attachments to plaintiff's motion showed that the accreditation of the White-owned school was the result of a bankruptcy court order, and was therefore not a voluntary decision on the part of the accreditation agency to treat the two schools differently.

There are a number of problems inherent in the district court's analysis. First, the complaint does not allege that the two schools were treated differently. The due process claim is focused exclusively on the attitude of the defendant's board members during the accreditation hearing. The complaint does not mention the second school. Rule 11 sanctions, of course, are to be based upon the contents of signed filings in district court, and no filings in this case contain a charge of disparate treatment. See Cunningham, 879 F.2d at 490 (sanctions were inappropriately imposed when claims were not frivolous at the time of filing; later finding of insufficiency of evidence is irrelevant to Rule 11).

Second, counsel during the colloquy with the district court appears to have disclaimed presenting to the court, either orally or in writing, any claim of disparate treatment. The key portion of the colloquy upon which the appellee asks us to focus is as follows:

THE COURT: Now is your argument in that regard based upon any specific fact or set of facts or is it more a result of a kind of disparate treatment?

MS. HAMER: No. I have done enough Title VII cases that I will not bring you that today, your Honor.

Appellee's counsel has asked us to interpret this portion of the record as constituting an assertion by the appellant that she was bringing a disparate treatment claim; the words are directly to the contrary. The subsequent statements in the colloquy between the district court and the appellant do not support appellee's position either.[1] Appellant counsel, in response to the district court's pressing questions, referred to the evidence of the accreditation of the other school, but in the context of her claim

1. The colloquy in fuller context was as follows:
THE COURT: Now is your argument in that regard based upon any specific fact or set of facts or is it more a result of a kind of disparate treatment?
MS. HAMER: No. I have done enough Title VII cases that I will not bring you that today, your Honor.
THE COURT: You have specific evidence?
MS. HAMER: Yes, we have specific evidence.
THE COURT: Give me the most piercing piece of evidence that relates to a racial bias?
MS. HAMER: Very well. The most piercing, as we see it, is that Golden State School began as a chain of schools in California back, approximately, 1977, schools all over the state operating under the name of the Golden State, licensed by the State of California.
The owner of that chain of schools had no ethnicity. They were white, male Americans. About two years ago that chain filed for bankruptcy. One of the schools was purchased out of bankruptcy and sold to the current owner or owners who are black.
Now NATTS has a standard that says, "You must be financially responsible. You must have a certain asset to liability ratio, and if you don't have that, then we deem that your financial structure is unsound."
Now here is what happened that we just learned of, and we will be able to prove this with the testimony of the predecessor company, the bankrupt company. We learned that last January, that NATTS went up to the Eastern District of California in Fresno appearing at the bankruptcy hearing, challenging again the same thing that I am here for, the plaintiff's request for injunctive relief.
But today as we speak, and the testimony will be before His Honor at a subsequent preliminary injunction hearing, they let the white company remain accredited, the all white company, but the one owner who is black, same situation, even the name of the school is the same and he is not in bankruptcy. They can keep a bankrupt school that is

that the hearing was biased and not to buttress a disparate treatment claim.

Appellee's counsel contends that, because the accreditation in the other case was not voluntary but was ordered by the bankruptcy court, it is irrelevant to plaintiff's claim. We disagree. Appellant reasonably could ask why NATTS refused to accredit a non-bankrupt school on financial grounds when it had already been ordered by a court to accredit a bankrupt school. Appellant's essential position was that the defendant should not have denied accreditation to her client on the basis of financial difficulties when it had previously been ordered by a bankruptcy court to grant accreditation to a similar school in more dire financial straits. Evidence of the bankruptcy court's order is not irrelevant to that position. The transcript shows that appellant referred to the bankrupt school in support of this very practical argument.

For the foregoing reasons, the imposition of Rule 11 sanctions in this case was an abuse of the district court's discretion. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 2460–61, 110 L.Ed.2d 359 (1990). The order imposing sanctions is REVERSED.

white. But they can't keep a school that may have fallen short of certain asset to liability standards if it's black.