1 F.3d 1341
 26 Fed.R.Serv.3d 910
 John C. RODICK, Plaintiff-Appellee-Cross-Appellant,
v.
The CITY OF SCHENECTADY; Kevin Coker; Brian Carroll;
Robert McHugh; Eric Yager; John Falvo, Jr., individually
and as agents, servants and or employees and police officers
of the City of Schenectady and the City of Schenectady
Police Department, Defendants-Appellants-Cross-Appellees,
Jane K. Finin, Esq., Appellant.
 Nos. 1452-1454, 1641, Dockets 93-7010, 93-7012, 93-7020, 93-7156.
 United States Court of Appeals,
Second Circuit.
 Argued May 12, 1993.
Decided Aug. 23, 1993.
 
 Jane K. Finin, Schenectady, NY (Grasso & Grasso, of counsel), pro se, and for defendants-appellants-cross-appellees, Kevin Coker, Brian Carroll, Robert P. McHugh, Eric Yager, and John Falvo, Jr.
 Melissa J. Smallacombe, Albany, NY (Roemer and Featherstonhaugh, P.C., of counsel), for defendant-appellant-cross-appellee City of Schenectady.
 Kevin A. Luibrand, Albany, NY (John T. Mitchell, Raul N. Tabora, Tobin and Dempf, of counsel), for plaintiff-appellee-cross-appellant.
 Before MINER, McLAUGHLIN and FRIEDMAN,* Circuit Judges.
 McLAUGHLIN, Circuit Judge:
 
 
 1
 Appellants are the City of Schenectady (the "City"), five of its police officers (the "officers") and the officers' attorney; they appeal from a judgment entered after a jury trial in the United States District Court for the Northern District of New York (Thomas J. McAvoy, Judge ). The City assails a jury award of damages against it and the individual defendants for malicious prosecution. The officers contend that their representation by the same lawyer who represented the City was an improper conflict of interest. The lawyer appeals from Rule 11 sanctions imposed on her as a result of a post-trial motion advancing the conflict of interest argument. Plaintiff cross-appeals, arguing that certain post-trial motions granted by the district court were untimely. For the reasons set forth below, we affirm in part, reverse in part, and vacate and remand in part for a new trial on the issue of damages for malicious prosecution.
 
 BACKGROUND
 
 2
 On February 27, 1989, Schenectady Police Officer Robert McHugh was investigating a hit-and-run accident. An eyewitness gave him a license plate number and this led him ultimately to Plaintiff Rodick's house. There, he met with officers Coker, Carroll and Falvo, who had arrived at the house as back-ups. A radio dispatch indicated that there was an outstanding warrant in Florida for Rodick, including a request for extradition. As a result of that dispatch, patrol supervisor Yager was called to the scene. Failing in their attempts to speak with Rodick from the outside, they entered and found Rodick naked in bed. There is some dispute as to what ensued, but it is clear that Rodick was beaten repeatedly and tumbled down a flight of stairs. He was then handcuffed and, still naked, was removed from the apartment, placed in a patrol car and taken to the police station, where he spent the night without clothes or medical attention. Rodick was arraigned the next morning and was charged with resisting arrest, leaving the scene of an accident, and was also held as a fugitive from justice on the Florida warrant.
 
 
 3
 On May 26, 1989, Rodick filed a Notice of Claim against the City citing the mistreatment he had suffered at the hands of the Schenectady constabulary. The resisting arrest charge was dismissed on July 10, 1989, by the local police court for insufficient evidence, but was re-filed in August 1989. The leaving-the-scene charge was dropped by the prosecutor. The fugitive-from-justice charge was referred to the Governor's office, but apparently was never acted upon. A seven-day trial on the resisting arrest charge began on March 27, 1990, and all the officers except Coker testified. At the close of the prosecution's case, Rodick's motion to dismiss the charge was granted, and the case was dismissed.
 
 
 4
 On August 27, 1990, Rodick filed a complaint in the Northern District of New York under 42 U.S.C. Sec. 1983, arguing that all the defendants had violated his rights under the First, Fourth, Sixth and Fourteenth Amendments to the United States Constitution; he also appended a state law claim for malicious prosecution of the resisting arrest charge. At trial, both the City and the officers were represented by the same attorney, the City's Assistant Corporation Counsel. At the close of Plaintiff's case, the district court granted the City's motion for judgment as a matter of law dismissing the Sec. 1983 claims against it because of Rodick's failure to establish a municipal policy or procedure under which the officers were acting.
 
 
 5
 At the close of all the evidence, the district court submitted the case to the jury, instructing it to complete a special verdict form. The jury returned a verdict against all five officers on the Sec. 1983 claim, concluding that: (1) each officer had either used, or had failed to intervene while others were using, excessive force; (2) they had falsely arrested Rodick for resisting arrest, although they did have probable cause to arrest Rodick on other grounds; and (3) they had been indifferent to Rodick's medical needs. The jury determined that all five officers were liable for $440,000 in damages on the Sec. 1983 claim, as follows: (1) $150,000 in compensatory damages and $20,000 in punitive damages for excessive force; (2) $60,000 in compensatory damages and $30,000 in punitive damages for false arrest; and (3) $150,000 in compensatory damages and $30,000 in punitive damages for indifference to medical needs.
 
 
 6
 With respect to the state law malicious prosecution claim, the jury concluded that four officers, but not Coker, were liable. Filling in the amounts on the verdict form provided by the court, the jury assessed compensatory damages on that claim as follows:
 
 
 7
 5. What amount of damages, if any, do you find the plaintiff is entitled to recover from the defendant under consideration which was directly sustained as a result of the criminal prosecution?
 
 KEVIN COKER: $ NA
 BRIAN CARROLL: $ 55,000
 ROBERT MCHUGH: $ 55,000
 ERIC YAGER: $ 55,000
 JACK FALVO, JR.: $ 55,000
 CITY OF SCHENECTADY: $ 550,000
 
 8
 The jury further awarded punitive damages on the claim in the amount of $10,000 each against Carroll, McHugh, Yager, and Falvo.
 
 
 9
 After this Delphic, if not bizarre, verdict was delivered, the jury was discharged and the following colloquy immediately ensued:
 
 
 10
 [DEFENSE COUNSEL]: Judge, with regard to the post-trial motions, I've already had some communications with the stenographer concerning the transcript and it is my intention to utilize parts of the transcript in support of the motion so that the Court does have the record in front of it when the motion is being made and I've been informed it's going to take some time to produce a transcript. With the Court's permission I would move at this point to move the 10 day period somewhat so that we can have some additional time to make that motion and adequately present it to the Court. I would like to ask the Court for 60 days which I think will provide the stenographer with ample time.
 
 
 11
 [PLAINTIFF'S COUNSEL]: Judge, if I understand correctly, I haven't spoken to the stenographer, there is [sic] only certain sections that he's requested. There is [sic] not a great deal of sections that were requested. I think there is [sic] some aspects of testimony. There is not a whole transcript that we are waiting for.
 
 
 12
 THE COURT: Well--
 
 
 13
 [PLAINTIFF'S COUNSEL]: 60 days seems like a good period of time.THE COURT: Okay. Well, it is appropriate to move during the original 10 day period to expand the time and the Court will grant a period of 40 days, in addition to the 10 days, to serve and file the motions.
 
 
 14
 (emphasis added). On April 13, 1992, four days after this colloquy, the district court entered judgment on the jury's verdict. Based on the jury's response in the special verdict form, the court concluded that the jury had "awarded compensatory damages in the amount of $770,000" against the defendants on the malicious prosecution claim. The total judgment was $1,250,000.
 
 
 15
 On April 27, 1992, the officers, having now retained new counsel, moved, under Fed.R.Civ.P. 59 and 60(b), to set aside the judgment and for a new trial solely because of a conflict of interest allegedly caused by the joint representation of the City and the officers by one lawyer. On May 20, 1992, the officers' new counsel requested an extension of time to make a motion under Rule 50(b). On June 2, 1992, while that request was still pending, the officers' counsel mailed a letter to the court asking it to "accept this as the on record request by the individual defendants to" make a Rule 50(b) motion. The district court agreed to treat that letter as the Rule 50(b) motion, and granted the individual officers an extension until August 30, 1992 to file papers in support of the motion. On June 19, 1992, 67 days after the entry of judgment, the City submitted papers moving for judgment as a matter of law under Fed.R.Civ.P. 50(b), a new trial under Rule 59, or remittitur of the damage verdict, and also challenging the finding of malicious prosecution against three of the officers.
 
 
 16
 By order dated August 18, 1992, the district court rejected the officers' argument that the joint representation of them and the City constituted an improper conflict of interest. In addition, the court, finding that the motion had "no basis in law or fact," imposed sanctions of $9,668.88 under Fed.R.Civ.P. 11 against the officers' new attorney. On September 2, 1992, that same attorney filed papers on the Rule 50(b) motion for which she had been granted an extension until August 30. In the motion, the officers sought judgment as a matter of law, contending that the jury's findings of false arrest, indifference to medical needs and malicious prosecution were not supported by the evidence.
 
 
 17
 On December 5, 1992, the district court entered an order addressing all the remaining post-trial motions made by defendants. At the threshold it noted that Rodick argued that such motions were untimely because they were filed outside of the ten-day time limits of Rules 50 and 59. The court rejected that argument, finding that because the colloquy quoted above occurred within those limits, the motions were timely. The court acknowledged that it was "troubled with the question of whether [defense counsel]'s statements to the court after the jury was excused constituted an oral motion or merely an indication of future intent to make one," but "[n]onetheless, [found] that [defense counsel]'s intent to file post-trial motions was evidenced by his statements." Because both the City and the officers were represented by the Assistant Corporation Counsel when he made the statements, the court concluded that all defense post-trial motions were timely. The court concluded, however, that the City could not challenge the damage award against it for malicious prosecution as inconsistent with the respondeat superior doctrine because it had failed to preserve this claim.
 
 
 18
 Moving to the merits, the court rejected the City's contention that the entire verdict should be set aside because it was against the weight of the credible evidence. The court, however, did grant, in part, its motion for remittitur, ordering that Rodick accept a reduction in compensatory damages for indifference to medical needs from $150,000 to $50,000 or a new trial. The court otherwise denied the request for remittitur, concluding that the damages awarded by the jury for malicious prosecution, excessive force, false arrest and the punitive damages awarded for indifference to medical needs were not excessive. It also rejected a challenge made by all defendants to the finding of liability for malicious prosecution against the four individual officers. Turning to the officers' motion for judgment as a matter of law, the court vacated the jury's finding of false arrest against them, concluding that because the jury had found that there was probable cause for arresting Rodick on one ground (thus conferring qualified immunity) but not on another, and because the propriety of such an arrest was an open legal question at the time of Rodick's arrest, section 1983 liability could not attach. Finally, the court rejected the officers' argument that the finding of indifference to medical needs should be vacated.
 
 DISCUSSION
 
 19
 On appeal, the City contends that the district court erred in failing to dismiss the malicious prosecution claim as a matter of law and, alternatively, that this court should order a reduction in the damages for that claim. The officers contend that the Assistant Corporation Counsel's conflict of interest deprived them of a fair trial, and that the district court erred in denying their request for judgment as a matter of law on the claim of malicious prosecution and indifference to medical needs. Their counsel appeals from the imposition of sanctions against her on the conflict of interest motion. On his cross-appeal, Rodick contends that all the defendants' post-trial motions except the conflict motion were untimely under Rules 50 and 59 and that the district court erred in entertaining them and thereafter in remitting the damage award[1] and vacating the false arrest finding. He argues alternatively, that in any event these issues were resolved properly.
 
 I. Timeliness of Post-Trial Motions
 Fed.R.Civ.P. 59 provides:
 
 20
 (b) Time for Motion. A motion for a new trial shall be served not later than 10 days after the entry of the judgment.
 
 
 21
 ....
 
 
 22
 (e) Motion to Alter or Amend a Judgment. A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment.
 
 
 23
 Fed.R.Civ.P. 50(b) likewise requires that a motion for judgment as a matter of law be made "not later than 10 days after entry of judgment." Fed.R.Civ.P. 6(b) makes these ten-day time limitations jurisdictional so that the failure to make a timely motion divests the district court of power to modify the trial verdict. Lapiczak v. Zaist, 451 F.2d 79, 80 (2d Cir.1971). Rule 6(b) also denies to district courts the power to enlarge the ten-day limit under either rule. Id.; see also Browder v. Director, Dep't of Corrections, 434 U.S. 257, 262 n. 5, 98 S.Ct. 556, 559 n. 5, 54 L.Ed.2d 521 (1978) ("Rule 6(b) prohibits enlargement of the time period prescribed in all of these Rules."). As we recently noted:
 
 
 24
 [T]he rule against the discretionary enlargement of certain time periods is "mandatory and jurisdictional and ... cannot be circumvented regardless of excuse." ... A request for an extension of time to file a motion seeking j.n.o.v. [Rule 50(b) ] or a new trial [Rule 59] is ineffective even if it is received without objection and granted by the court.... The question, then, is whether [counsel's] statements [during the 10-day period] constituted an oral motion or an expression of desire to file a subsequent (and tardy) written motion.
 
 
 25
 Meriwether v. Coughlin, 879 F.2d 1037, 1041 (2d Cir.1989) (citations omitted).
 
 
 26
 In Meriwether, we concluded that counsel's statement that "I would, your Honor, like to at this time note that defendants wish to move for a judgment notwithstanding the verdict," although inartful, did constitute a motion under Rule 50(b), and was not a mere request for an extension of time to make the motion. Id. at 1040. In reaching that conclusion, we distinguished Hulson v. Atchison, T. & S.F. Ry., 289 F.2d 726 (7th Cir.), cert. denied, 368 U.S. 835, 82 S.Ct. 61, 7 L.Ed.2d 36 (1961), where the Seventh Circuit construed the statement, "I am merely asking for an extension of time in which to file my motion" as an impermissible motion for an extension. Id. at 727, 729. We found that "[t]he language in Hulson was much clearer, and the trial court in [Hulson ], unlike [Meriwether ], had rejected the ... interpretation" that the language was the motion itself. 879 F.2d at 1041.
 
 
 27
 Here, defense counsel spoke of the motion prospectively; he requested an extension of time so that the district court could "have the record in front of it when the motion is being made," and stated that "I would move at this point to move the 10 day period somewhat so that we can have additional time to make the motion." The district court responded that "it is appropriate to move during the original 10 day period to expand the time and the Court will grant a period of 40 days, in addition to the 10 days, to serve and file the motions." Under these circumstances, we reject the district court's conclusion that defense counsel's post-verdict statement was closer to Meriwether than to Hulson. Counsel's language in making the motion, and the district court's language in granting it, clearly indicate that they regarded the request as (an impermissible) one for an extension of time to make the motion.
 
 
 28
 The defendants also contend that because they relied on the district court's representation that the time frame in which to make the post-trial motions had been extended, such reliance "constituted an adequate excuse" for their failure to comply with the time limits. The reliance argument is flawed, however, because it fails to recognize that the Rule 50(b) and 59 time limitations are jurisdictional and that excuses are therefore unavailing. See Lapiczak, 451 F.2d at 80 (the rules against enlargement of time frames are "mandatory and jurisdictional" and "cannot be circumvented regardless of excuse").
 
 
 29
 The defendants' final argument is that even if the district court erred in concluding that their motions were made within the 10-day limit, and even if their reliance on the court's ruling is beside the point, we should nevertheless consider the questions raised in those motions under our discretionary power. See Reichman v. Bonsignore, Brignati & Mazzotta P.C., 818 F.2d 278, 281 (2d Cir.1987); Rebaldo v. Cuomo, 749 F.2d 133, 137 (2d Cir.1984), cert. denied, 472 U.S. 1008, 105 S.Ct. 2702, 86 L.Ed.2d 718 (1985). We largely reject this argument. While we do indeed have the power to consider arguments not properly raised below, we exercise that power only when "necessary to prevent a manifest injustice." Reichman, 818 F.2d at 281; see also Rebaldo, 749 F.2d at 137 (exception to rule that "this Court will not consider an issue not passed upon below" was appropriate where "the district court examined the issue ... in some detail" and the "court's decision ha[d] broad legal ramifications and concern[ed] the validity of a State statute").
 
 
 30
 Judging the issues raised here against the "manifest injustice" standard, we conclude that, except for the malicious prosecution damages of $770,000, none of them warrants such extraordinary consideration. Accordingly, we: (1) do not consider the argument made by all defendants that the malicious prosecution claim should never have reached the jury as a matter of law or the officers' argument that the deliberate indifference to medical needs claim should likewise have been dismissed as a matter of law; (2) reverse the order vacating the jury's determination of liability for false arrest because the motion was untimely; (3) and vacate the remittitur regarding damages for indifference to medical needs because the motion was untimely.
 
 II. Malicious Prosecution Damages
 
 31
 Although the attack on the malicious prosecution award was just as untimely as the other motions, we conclude that our failure to address it would result in manifest injustice. We will therefore exercise our power to consider it.
 
 
 32
 The City contends that the $550,000 verdict against it on the malicious prosecution claim was excessive because under ancient notions of respondeat superior liability it could not be liable in any greater amount than the police officers whose misconduct occasioned the City's liability. It also contends that, because the officers were jointly and severally liable, a single award of $55,000 against all of them jointly and severally should have been made. The district court concluded that, by failing to object to the verdict sheets or to the charge, or to raise this issue in some other fashion before the case was submitted to the jury, the City waived this challenge. However, because the jury instructions accurately described the law as far as they went, because the verdict is so contrary to basic concepts of respondeat superior that it would be a miscarriage of justice to let it stand, and because the judgment entered on the verdict was inconsistent with New York state law of joint and several liability, we reject the waiver argument.
 
 
 33
 Malicious prosecution, by definition, is an intentional tort. See Bittner v. Cummings, 188 A.D.2d 504, 506, 591 N.Y.S.2d 429, 431 (2d Dep't 1992). Intentional tortfeasors, such as the officers here, are jointly and severally liable for the damages they cause when a plaintiff has suffered a single injury. See Ravo v. Rogatnick, 70 N.Y.2d 305, 312, 514 N.E.2d 1104, 1108, 520 N.Y.S.2d 533, 537 (1987); see also In re Seagroatt Floral Co., 78 N.Y.2d 439, 448, 583 N.E.2d 287, 292, 576 N.Y.S.2d 831, 836 (1991) ("Joint and several liability ... imposes on each wrongdoer responsibility for the entire damages awarded, even though a particular wrongdoer's conduct may have caused only a portion of the loss."). The City's liability, in turn, was based on respondeat superior and, as such, was limited to the amount assessed against the officers. Pangburn v. Buick Motor Co., 211 N.Y. 228, 105 N.E. 423 (1914); accord Norwalk v. Air-Way Elec. Appliance Corp., 87 F.2d 317, 319 (2d Cir.1937) ("[T]he liability of the master is derived from and is dependent upon the liability of the servant.").
 
 
 34
 The jury was never instructed on the issue of joint and several liability. The district court did give the following instruction with respect to respondeat superior liability:
 
 
 35
 Now, with respect to the City of Schenectady. If you should find that one or more of the defendants acted to maliciously prosecute the plaintiff as I've just defined it, you must then proceed to determine whether the City of Schenectady is also liable under that claim. I instruct you that an employer, such as the City of Schenectady, is liable for the wrongful acts of its employees that are done by the employee within the scope of that employee's employment. His job. Thus, if you should find that one or more of the individual defendants acted to maliciously prosecute the plaintiff, you must then consider whether such action was taken by the defendant within the scope of his duties as a police officer for the City of Schenectady. If you should so find that the action was taken within the scope of his duties, then you will find that the City of Schenectady is also liable for the claim of malicious prosecution.
 
 
 36
 Thus, the instructions, while accurate and unobjectionable as far as they went, never advised the jury of two crucial factors relating to the damage calculation and apportionment: (1) that because they were jointly and severally liable, different amounts of liability could not be allocated to the individual officers; and (2) because the City's liability was based on the doctrine of respondeat superior, it could not exceed, or be separate from, the officers' liability.
 
 
 37
 Without instruction on these important rules of damage calculation, the verdict form was an invitation to the jury to come up with an erroneous damage calculation. By placing separate entries next to each officer's name, the form suggested to the jury that it could assess separate damages against each of the defendants. As we stated in Aldrich v. Thomson McKinnon Sec., Inc., 756 F.2d 243, 248 (2d Cir.1985):
 
 
 38
 We reiterate, however, that this form of verdict should be avoided where defendants, if liable, are liable jointly and severally for a single injury. See Gagnon v. Ball, 696 F.2d 17, 19 n. 2 (2d Cir.1982). The jury should be asked, instead, what amount of damages the plaintiff has suffered. Damages in this amount can then be awarded, jointly and severally, against each defendant found liable.
 
 
 39
 In Gagnon, we noted the "inadvisability of" submitting interrogatories to the jury that "explicitly invite[ ] [it] to answer separately as to each defendant the amount of compensatory damages to be recovered by the plaintiff." Gagnon, 696 F.2d at 19 n. 2. We advised instead that "[w]here, as here, defendants, if liable at all, are liable for causing the same injury, a jury given special interrogatories should be asked what amount of damages the plaintiff has suffered" and "[a]ll defendants found liable for the injury are then jointly and severally liable for the single award of compensatory damages." Id.
 
 
 40
 While other factors in the Aldrich case led us to conclude that the verdict there could be reconciled fairly with joint and several liability, no such conclusion can be reached here. In Aldrich, the jury was confronted with only two defendants and no respondeat superior question; and those defendants had also been found liable for punitive damages (to which joint and several liability does not apply) in identical amounts. From this, we were able to assure ourselves that the jury intended that the damages allocated to each defendant should be added together, and the aggregate then entered as the judgment on the claim for which they were jointly and severally liable. Aldrich, 756 F.2d at 248.
 
 
 41
 Here, by contrast, four individual defendants were found liable, and while there were, as in Aldrich, separate entries of identical punitive damages on the claim, there was a separate problem with the verdict form--the City was listed along with the individual defendants without any explanation, even though the City could be held liable only vicariously. This induced the jury to allocate to the City a damage amount ten times greater than the liability assessed against each of the individual defendants and 2.5 times greater than the damages assessed against the officers collectively. Combining the joint and several liability confusion with the fact that the verdict is plainly inconsistent with the theory of respondeat superior, it is clear that we cannot let it stand.
 
 
 42
 Our inquiry does not end there, however. The City urges that we order damages reduced to $55,000 for which the individual officers should be held jointly and severally liable, with the City vicariously liable for only that amount. New York, whose law governs, applies the rule of de melioribus damnis to joint tortfeasors against whom the jury has assessed equal amounts of liability. See Farber v. Demino, 254 N.Y. 363, 365, 173 N.E. 223, 224 (1930). Under this rule, the $55,000 assessed against each defendant would be the entire verdict subject to joint and several liability and vicarious liability.
 
 
 43
 Imposing such a result would, however, be troubling under the circumstances of this case. In the damage interrogatories on Rodick's other claims, the jury assessed different amounts of damages against the individual officers. Accordingly, it is a reasonable inference that with respect to malicious prosecution, the jury may have intended that the officers be held separately, but equally, liable. If so, then the total damages that the jury intended for Rodick to recover from the officers on the malicious prosecution claim would have been $220,000. Moreover, because the jury was never told that the City's liability could not be assessed separately from that of the officers, and because it entered $550,000 as the damage amount against the City, it may very well have intended that Rodick receive $770,000.
 
 
 44
 Because we believe that appellate resolution of this question would require speculation as to the jury's intention, we remand for a new trial limited to the issue of damages for malicious prosecution. Accordingly, we do not reach the City's alternative argument that the malicious prosecution damages were excessive as a matter of law.
 
 III. Conflict of Interest
 
 45
 Relying on Dunton v. County of Suffolk, 729 F.2d 903 (2d Cir.), amended on other grounds, 748 F.2d 69 (2d Cir.1984), the police officers claim that the district court erred in rejecting their (concededly timely[2]) post-trial motion for a new trial because their lawyer was also representing the City, resulting in an improper conflict of interest. In Dunton, a police officer happened upon his wife and a co-worker (Dunton) apparently sharing an intimate moment in a car, dragged Dunton out of the car, and beat him. Subsequently, Dunton brought a Sec. 1983 claim against the officer and the Suffolk County Police and, at trial, a county attorney represented both defendants. In considering the officer's argument that this constituted an improper conflict, we noted that because municipalities may be held liable under Sec. 1983, see Monell v. Dep't of Social Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), joint representation of municipalities and their employees presents a possibility for conflict of interest because "[a] municipality may avoid liability by showing that the employee was not acting within the scope of his official duties" and "[t]he employee, by contrast, may partially or completely avoid liability by showing that he was acting within the scope of his official duties." Dunton, 729 F.2d at 907. We found that the potential for conflict had become manifest because the county attorney had opened to the jury by saying that the officer "acted as a husband, not even as an officer," and closed by saying that it was obvious that the officer "was acting as an irate husband." Because of this manifest, serious and direct conflict and because the officer was never advised that his attorney would take positions contrary to his own, the district court had a duty to warn the officer about the conflict and its failure to do so was error. Id. at 908.
 
 
 46
 Dunton is distinguishable. Here, both the City and the officers argued that the officers were acting in their official capacity. Furthermore, the officers concede that their trial counsel advanced and argued all possible defenses available to them, including the qualified immunity defense, but contend that counsel's successful motion to dismiss the Sec. 1983 claim against the City and his desire to please his employer led him to fail to "put in the proof required to support the qualified immunity defense." Because the officers have pointed to no specific facts to support this claim, they can show no prejudice, and the district court's rejection of their motion is affirmed. Moreover, the officers' motion for counsel fees under N.Y.Pub.Off.Law Sec. 18 (McKinney 1988) was properly rejected because the entitlement to such fees only arises when a conflict of interest has been found.
 
 IV. Rule 11 Sanctions
 
 47
 Counsel representing the officers also contends that even if the conflict claim was properly rejected, Rule 11 sanctions should not have been imposed on her because there was a good faith factual and legal basis for the conflict motion. We review a district court's Rule 11 determinations for abuse of discretion. N.A.S. Import, Corp. v. Chenson Enters., Inc., 968 F.2d 250, 254 (2d Cir.1992) (citing Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405, 110 S.Ct. 2447, 2460, 110 L.Ed.2d 359 (1990)). As we have repeatedly held, "Rule 11 'is targeted at situations "where it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands." ' " Associated Indem. Corp. v. Fairchild Indus., 961 F.2d 32, 34 (2d Cir.1992) (quoting Stern v. Leucadia Nat'l Corp., 844 F.2d 997, 1005 (2d Cir.) (quoting Eastway Constr. Corp. v. City of New York, 762 F.2d 243, 254 (2d Cir.1985), cert. denied, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987)), cert. denied, 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 109 (1988)). "When divining the point at which an argument turns from merely losing to losing and sanctionable, ... we have instructed district courts to resolve all doubts in favor of the signer." 961 F.2d at 34-35 (citations and internal quotations omitted) (emphasis in original).
 
 
 48
 In the instant case, the district court concluded "that there existed no basis in law or fact to bring the" conflict motion. In concluding that the motion was not well-grounded in fact, the court stated that "[c]ounsel for the individual defendants has made serious allegations against trial counsel, many of which are clearly contradicted by the facts" of the case. Specifically, it pointed to the allegation--made in the affidavits of the police officers in support of the motion--that trial counsel did not raise the qualified immunity defense and to a statement in one officer's affidavit that he did not know he was a defendant until the eve of trial, both of which were inaccurate.
 
 
 49
 The court rejected the argument that these mistakes were the product of haste necessitated by the new counsel's late entry into the case and the impending expiration of the time limit for post-trial motions, stating that "the court would have granted an extension of the time to file motions had counsel so requested." As discussed above, the district court lacked jurisdiction to grant any such extension. While we do not suggest, and in fact affirmatively reject, the notion that filing deadlines can serve as an excuse for shoddy pleading, we are concerned that the district court's misunderstanding of its ability to extend the time limits may have infected its determination of the quality of the motion. We also note that the flaws cited by the district court were contained in the affidavits of the individual officers. Where an attorney is forced to plead under exigent circumstances, her reliance on the affidavits of her clients should be sufficient to constitute reasonable investigation for purposes of Rule 11. Hamer v. Career College Ass'n, 979 F.2d 758, 759 (9th Cir.1992).
 
 
 50
 We note that the district court did not deny that the interests underlying Dunton were also implicated in this case, nor did it dispute that this case held the same potential for the type of conflict that actually occurred in Dunton. Rather, the court merely held "that any 'potential' for conflict which might have existed prior to trial [ultimately] proved non-existent." While we agree with the district court that the officers failed to show any prejudice, the motion certainly alleged it. The affidavits in support of the motion are replete with allegations that, in addition to presenting the qualified immunity defense poorly, trial counsel had failed to listen to the officers regarding trial tactics and possible defenses. Although these contentions did not pan out, they were not so quixotic as to warrant sanctions. Because we reject its determination that the motion was not well-grounded in law or fact, we conclude that the district court abused its discretion in imposing sanctions and accordingly reverse.
 
 CONCLUSION
 
 51
 Based on the foregoing, we: (1) reverse the district court's vacatur of the false arrest verdict against the individual officers and its remittitur order; (2) vacate that part of the verdict awarding compensatory damages for malicious prosecution and remand for a new trial on that issue; and (3) reverse the order imposing Rule 11 sanctions. We have considered the remainder of the parties' arguments, find them to be without merit, and accordingly affirm in all other respects.
 
 
 
 *
 The Honorable Daniel M. Friedman of the United States Court of Appeals for the Federal Circuit, sitting by designation
 
 
 [1]
 While we recognize that Rodick subsequently accepted the remittitur, thereby waiving his right to appellate review of its propriety, see Fiacco v. City of Rensselaer, 783 F.2d 319, 333 (2d Cir.1986) ("[W]hen a plaintiff has agreed to a remittitur order, he cannot challenge it either on appeal, ... or on a cross-appeal.") (citations omitted), cert. denied, 480 U.S. 922, 107 S.Ct. 1384, 94 L.Ed.2d 698 (1987), he did not, and could not, waive any objection to the district court's jurisdiction over the motion. See EEOC v. Local 580, Int'l Ass'n of Bridge, Structural & Ornamental Ironworkers, 925 F.2d 588, 592 (2d Cir.1991) ("Review of a court's jurisdiction over the subject matter of a claim is appropriate at any time during legal proceedings."); Reale Int'l, Inc. v. Federal Republic of Nigeria, 647 F.2d 330, 331 (2d Cir.1981) ("Graven in stone is the maxim that parties cannot confer jurisdiction on a federal court by consent or stipulation."); see also Stone v. William Beaumont Hosp., 782 F.2d 609, 613 n. 3 (6th Cir.1986) ("Subject matter jurisdiction may be contested at any and all stages of the proceedings, even after judgment and may be addressed by the court sua sponte.")
 
 
 [2]
 This motion was timely because it was filed on April 27, 1992, ten business days after entry of the judgment. See Fed.R.Civ.P. 6(a)