399 F.Supp.2d 369 (2005)
In re: INITIAL PUBLIC OFFERING SECURITIES LITIGATION
Amy Liu, Robert Tenney, Robert Tate, Mary Gorton, Carla Kelly, Henry Ciesielski, ED Grier, Frank Turk, Jennie Papuzza, Stanley Warren, Ellen Dulberger, Craig Mason, and Sharon Brewer, Plaintiffs,
v.
Credit Suisse First Boston Corp., Credit Suisse First Boston (USA), Inc., Credit Suisse First Boston, Credit Suisse Group, Efficient Networks, Inc., eMachines, Inc., Lightspan Partnership, Inc., Tanning Technology Corp., and Tumbleweed Communications Corp., Defendants.
No. MDL 1554(SAS). No. 21 MC 92(SAS). No. 04 Civ. 3757(SAS).
United States District Court, S.D. New York.
July 27, 2005.
*370 John G. Watts, Yearout & Traylor, P.C., Birmingham, AL, for Plaintiffs.
Kristin Linsey Myles, Robert L. Dell Angelo, Munger, Tolles & Olson LLP, San Francisco, CA, Michael L. Hirschfeld,
John A. Boyle, Milbank, Tweed, Hadley & McCloy LLP, New York, NY, Randall J. Clement, Sheppard, Mullin, Richter & Hampton LLP, Costa Mesa, CA, Mitchell E. Herr, Holland & Knight LLP, Miami, FL, for Issuer Defendants.
Peter K. Vigeland, Robert W. Trenchard, Wilmer, Cutler & Pickering, New York, NY, for CSFB Defendants.

OPINION AND ORDER
SCHEINDLIN, District Judge.
Plaintiffs' claims in the Liu action, No. 04 Civ. 3757, have been dismissed.[1] Defendants now request sanctions pursuant to the Private Securities Litigation Reform Act (the "PSLRA"), 15 U.S.C. § 78u-4(c), and Rule 11 of the Federal Rules of Civil Procedure.
I. LEGAL STANDARD
Section 21(D)(c) of the PSLRA, entitled "Sanctions for abusive litigation," provides:
In any private action arising under this chapter, upon final adjudication of the action, the court shall include in the record specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or dispositive motion.[2]
If the court determines that there has been a violation of Rule 11, section 21(D)(c)(2) imposes mandatory sanctions and adopts a rebuttable presumption that the appropriate sanction for noncompliance "is an award to the opposing party of the reasonable attorneys' fees and other expenses incurred."[3]
Rule 11(b) states, in pertinent part:

*371 By presenting to the court . . . a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after a reasonable inquiry under the circumstances . . . the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law . . . [and] the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.[4]
If after notice and a reasonable opportunity to respond, the court determines that the Rule 11 standard has been violated, the court may impose sanctions upon the attorneys, law firms, or parties.[5]
"Rule 11 is violated when it is clear under existing precedents that a pleading has no chance of success and there is no reasonable argument to extend, modify, or reverse the law as it stands."[6] "The standard for triggering the award of fees under Rule 11 is objective unreasonableness.[7] Whether an attorney's conduct was unreasonable should be determined not with the benefit of hindsight, but rather on the basis of what was objectively reasonable to believe at the time the pleading, motion or other paper was submitted.[8] Furthermore, all doubts must be resolved in favor of the signer of the pleading.[9]
II. DISCUSSION
A. The Alleged Scheme
Defendants argue that plaintiffs' allegations of a fraudulent scheme were so meritless as to be objectively frivolous.[10] Defendants assert that "plaintiffs' claims rested on factual assertions the falsity of which was evident from publicly available informationnamely, the stock prices of the relevant issuersand plaintiffs' hypothesized securities fraud scheme, even if true, would have benefited, not harmed, the named plaintiffs."[11]
Plaintiffs alleged a complicated scheme. Corporate insiders and investment banks allegedly discounted earnings estimates for companies that had recently held initial public offerings ("IPOs"). This discounting, combined with an alleged "Pop" in prices that occurred after defendants allegedly underpriced the companies' IPOs, created an environment in which the companies repeatedly beat their earnings estimates. Plaintiffs alleged that securities analysts employed by the bank defendants conditioned *372 the investing public to believe that such successful earnings reports were likely to continue by repeatedly warning that earnings estimates were overly conservative or susceptible to "upside surprise." This conditioning allegedly affected the market's valuation of the relevant securities by priming investors to expect that the securities' earnings estimates would always be beaten and, in effect, that the stock prices would continue to rise indefinitely.[12]
In my March 31, 2005 Opinion and Order ("March 31 Opinion") granting defendants' motions to dismiss, I found that plaintiffs' claims, which rested on the allegation that "[t]he purposes and effect of [the alleged] scheme was to create the illusion of ever rising stock prices .'"[13] were contradicted by judicially noticeable securities trading data.[14] Plaintiffs moved for reconsideration, claiming that they were victims of their own inartful language, and asserting that the intention of their complaint was to allege increases in artificial inflationwhich could not be contradicted by objective trading datarather than price. On May 13, 2005, I supplemented my March 31 Opinion, noting that, even if plaintiffs were permitted to amend their complaint to conform with their asserted intention, their claims would still be dismissed for failure to plead loss causation.[15]
Though ultimately deficient, plaintiffs' claims were not frivolous. Plaintiffs summarized thousands of statements allegedly made by defendants in pursuit of their fraudulent scheme.[16] Plaintiffs' allegations of wrongdoing were similarly detailed.[17] Indeed, the primary deficiency of plaintiffs' loss causation allegations was not that plaintiffs failed to make any allegations of loss causation, but rather that plaintiffs' loss causation allegations were inappropriate for the type of wrongdoing alleged.[18] In short, plaintiffs attempted to convince the court that they alleged market manipulation, and alleged loss causation accordingly. However, because plaintiffs' claims were based predominantly on misrepresentations and omissions, plaintiffs' loss causation allegations were insufficient.[19] There is no evidence of any improper purpose or conduct on the part of plaintiffs' counsel in pursuing novel theories that were ultimately rejected. Accordingly, I find that plaintiffs' pleadings did not violate any of the elements of Rule 11(b).
B. The Issuers
Tumbleweed, Tanning Technology Corp. ("Tanning") and eMachines, Inc. ("eMachines") also argue that, even if plaintiffs' alleged scheme was not frivolous as a whole, plaintiffs violated Rule 11 by bringing their claims against those specific issuers.
*373 1. Tumbleweed
Defendants assert that plaintiffs violated Rule 11 with respect to their claims against Tumbleweed by proffering class representatives who lacked standing to sue Tumbleweed.[20] Specifically, defendants argue that Lloyd Hinn and Sharon Brewer, the two proposed class representatives for plaintiffs' claims against Tumbleweed, were inappropriate.
Hinn submitted a PSLRA certification showing that he had purchased no shares of Tumbleweed securities during the proposed class period. Plaintiffs later admitted that Hinn's inclusion as a class representative was erroneous, and withdrew him as a potential class representative when defendants brought the error to plaintiffs' attention.[21] Plaintiffs' inclusion of Hinn as a potential class representative was a clear and easily avoidable error. Nonetheless, plaintiffs voluntarily withdrew Hinn when advised of their error. Moreover, plaintiffs' case against Tumbleweed did not hinge on whether Hinn was a suitable lead plaintiff, because Sharon Brewer, who had purchased Tumbleweed securities during the proposed class period, was also a putative class representative with respect to those claims. Thus, Hinn's candidacy, while in error, did not prejudice defendants, did not affect plaintiffs' claims against Tumbleweed, and does not warrant an award of sanctions.
Defendants also assert that Brewer, the other putative Tumbleweed class representative, lacked standing to pursue plaintiffs' claims. Specifically, defendants argue that "Brewer ... sold all her stock during the alleged class period for a profit, and thus never had a viable claim against Tumbleweed."[22] Defendants argue that Brewer was explicitly excluded from plaintiffs' class definition, which excludes from the class all investors "who sold all their stock during the class period and suffered no damages."[23]
However, the parties' correspondence reveals that plaintiffs intended to argue that "in-and-out sellers can still recover damages under [Rule] 10b-5 even if the stock, was sold for more than it is purchased for and even if the sale was prior to the disclosure date."[24] Plaintiffs argued in that letter for an extension of existing law to compensate those who profited less from their trades (because of the dissipation of artificial inflation) than they would have had the price not been manipulated.[25] Plaintiffs' argument, and Brewer's candidacy, rested on the nonfrivolous argument that victims of securities fraud should be entitled to all damages attributable to alleged artificial inflation, even if those victims sold securities for a profit.[26] Plaintiffs' *374 claims against Tumbleweed do not violate Rule 11(b).
2. Tanning
Defendants argue that plaintiffs violated Rule 11 with respect to their claims against Tanning by failing to present a class representative with standing. Plaintiffs proffered Craig Mason, who purchased 500 Tanning shares on July 28, 1999. However, the first post-IPO analyst report for Tanning was not issued until August 17, 1999.[27] Defendants argue that Mason could not have been injured by the alleged scheme because he purchased shares before any alleged artificial inflation entered the price of Tanning shares.[28]
Defendants' argument mischaracterizes plaintiffs' complaint. Although plaintiffs were ultimately estopped from relying on allegations of pre-IPO misrepresentations,[29] the alleged fraud involved elements of pre and post-IPO inflation. Indeed, plaintiffs alleged a scheme intended to produce both "Pop" (an initial runup in securities prices following an IPO) and "Performance" (a continued pattern of price increases in the aftermarket).[30] Although plaintiffs' allegations that defendants' scheme caused both "Pop and Performance" in stock prices were ultimately deficient, they were not frivolous. Had plaintiffs' "Pop" allegations been accepted by the Court, Mason would have been included within the proposed class definition because the alleged scheme included inflationary components both during the IPO and in the aftermarket. Accordingly, plaintiffs have not violated Rule 11(b) with respect to their claims against Tanning.
3. eMachines
Finally, defendants assert that plaintiffs' claims against eMachines are deficient "because eMachine's stock price never rose, whether as a result of the alleged fraud or otherwise."[31] Defendants' assertion is demonstrably untrue. Defendants conceded in briefing their motions to dismiss that eMachines did experience a brief increase in price on the first day of trading, although eMachines shares closed that day below the offering price.[32] Plaintiffs thus alleged a "Pop" with respect to eMachines, albeit a small and brief one.
Defendants also complain that none of the "conditioning statements" alleged by plaintiffs occurred prior to the first announcement that eMachines had beat its revenue forecasts. Defendants argue that this lack of aftermarket conditioning statements precludes plaintiffs from relying on the theory that such statements created investor excitement and caused artificial inflation in the period preceding earnings announcements.[33] However, like defendants' arguments regarding Tanning, this argument ignores the "Pop" portion of plaintiffs' alleged scheme. Plaintiffs alleged that the Sales Memo circulated prior to the eMachines IPO included conditioning statements which, by definition, were made before the first post-IPO earnings statements were released.[34] eMachines thus shared several key traits with the other defendant Issuers, including an immediate *375 rise in price following the IPO, "conditioning statements" contained in the Sales Memo that preceded the IPO, and one instance in which eMachines beat CSFB's earnings forecast. Plaintiffs' inclusion of eMachines did not violate Rule 11(b).
III. CONCLUSION
Plaintiffs have satisfied the requirements of Rule 11(b). Accordingly, defendants' requests for sanctions are denied in their entirety. The Clerk is directed to close this case.
SO ORDERED.
NOTES
[1] See In re Initial Public Offering Sec. Litig. ("Liu Dismissal"), 383 F.Supp.2d 566 (S.D.N.Y.2005).
[2] 15 U.S.C. § 78u-4(c)(1).
[3] 15 U.S.C. § 78u-4(c)(3)(A)(i)-(ii).
[4] Fed.R.Civ.P. 11(b).
[5] See Fed.R.Civ.P. 11(c).
[6] Corroon v. Reeve, 258 F.3d 86, 92 (2d Cir. 2001).
[7] Storey v. Cello Holdings, LLC, 347 F.3d 370, 387 (2d Cir.2003).
[8] See Kamen v. American Tel. & Tel. Co., 791 F.2d 1006, 1011-12 (2d Cir.1986).
[9] See Rodick v. City of Schenectady, 1 F.3d 1341, 1350 (2d Cir.1993).
[10] See 7/1/05 Letter from Robert L. Dell Angelo, counsel for defendant Tumbleweed Communications Corp. ("Tumbleweed"), to the Court ("Dell Angelo Letter") at 7; see also 7/12/05 Letter from Peter K. Vigeland, counsel for Credit Suisse First Boston (USA) ("CSFB") and the CSFB-related defendants, to the Court ("Vigeland Letter") at 1 (joining in the frivolousness arguments of the Dell Angelo Letter); 7/5/05 Letter from Michael L. Hirschfeld, counsel for defendants Efficient Networks, Inc. ("Efficient") and Lightspan Partnership, Inc. ("Lightspan"), to the Court ("Hirschfeld Letter") at 1 (same).
[11] Dell Angelo Letter at 7.
[12] See Liu Dismissal, 383 F.Supp.2d 566, 567.
[13] Plaintiffs' Third Amended Complaint ¶¶ 256, 267.
[14] See Liu Dismissal, 383 F.Supp.2d at 584.
[15] See In re Initial Public Offering Sec. Litig. ("Liu Reconsideration"), No. 21 MC 92, 2005 WL 1162445, 399 F.Supp.3d 261 (S.D.N.Y. May 13, 2005).
[16] See Exhibits to [Third] Amended Complaint.
[17] See Third Amended Complaint (comprising 84 pages and nearly 300 paragraphs, and including sections addressed to each of the required elements of securities fraud).
[18] See Liu Reconsideration, 2005 WL 1162445, at *3, 399 F.Supp.3d at 261 (noting that "[n]onetheless, in material misstatement and omission cases, a court cannot presume dissipation of the inflationary effect; a plaintiff must explicitly allege a disclosure or some other corrective event") (quotation marks and citation omitted).
[19] See id.
[20] See Dell Angelo Letter at 2-4.
[21] See 7/19/04 Plaintiffs' Letter to the Court opposing defendants' motions for sanctions ("Pl.Opp.") at 14.
[22] Dell Angelo Letter at 3.
[23] Third Amended Complaint ¶ 53. Plaintiffs' Second Amended Complaint excluded those who sold their shares during the class period and received a profit. On September 9, 2004, I issued an Order granting plaintiffs' moved for leave to amend their class definition.
[24] 8/6/04 Letter from John Watts, counsel for plaintiffs, to Dell Angelo at 1.
[25] See id.
[26] See id. (citing Green v. Occidental Petroleum Corp., 541 F.2d 1335 (9th Cir.1976)) (Sneed, J., concurring) ("A convergence of the price and value lines, however, presents a different question with respect to the purchaser who sells before disclosure. From the market he recoups only a portion of the original value of the misrepresentation for which he paid full value. The unrecovered portion should be recoverable from the corporate wrongdoer, even when the purchaser resells at a price greater than his cost.").
[27] See Dell Angelo Letter at 5.
[28] See id.
[29] See Liu Dismissal, 383 F.Supp.2d 566, 580.
[30] See Pl. Opp. at 14.
[31] Dell Angelo Letter at 5.
[32] See 12/16/04 eMachines, Inc.'s Reply Memorandum of Law in Support of Motion to Dismiss the Third Amended Complaint at 1.
[33] See Dell Angelo Letter at 6.
[34] See Pl. Opp. at 13; Ex. E to Third Amended Complaint.