696 F.2d 17
 Doris E. GAGNON, Plaintiff-Appellee,
v.
Archibald BALL and Thomas Laplaca, Individually and in their
official capacities as Officers in the Police
Department of the Town of Milford,
Connecticut, Defendants-Appellants.
 No. 195, Docket 82-7248.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 8, 1982.
Decided Dec. 8, 1982.
 
 Bruce L. Levin, Milford, Conn., for defendants-appellants.
 Sue L. Wise, New Haven, Conn. (Williams & Wise, New Haven, Conn., on the brief), for plaintiff-appellee.
 Before FRIENDLY, NEWMAN and KEARSE, Circuit Judges.
 NEWMAN, Circuit Judge:
 
 
 1
 Defendant police officers Archibald Ball and Thomas Laplaca appeal from a judgment of the United States District Court for the District of Connecticut (Robert C. Zampano, Judge) entered upon a jury verdict finding them liable for an unlawful arrest in an action brought under 42 U.S.C. Sec. 1983. Defendants contended that the evidence entitled them to judgment notwithstanding the verdict. We agree with Judge Zampano's rejection of this claim and therefore affirm the judgment.
 
 Background
 
 2
 Plaintiff-appellee Doris Gagnon lives in Milford, Connecticut. In 1971, her home was condemned in connection with the development of the Silver Sands State Park. Mrs. Gagnon fiercely objected to this taking, and refused the compensation offered by the State. She also refused to leave the land she previously owned, living there in a trailer and two tin sheds, which she shared with chickens, geese, and ducks.
 
 
 3
 Prior to the incident from which this case arose, Mrs. Gagnon had been a persistent and vocal critic of various governmental agencies, including the Milford Police Department. She frequently complained that the police ignored her calls, and that they provided the Town of Milford with inadequate protection against crime.
 
 
 4
 On the evening of October 15, 1977, Mrs. Gagnon was sitting in one of her sheds, dressed in night clothes. A man appeared at the door and unclothed himself in an indecent manner. Arming herself with a pellet gun that she used to frighten off raccoons, Mrs. Gagnon chased the intruder toward the main road of the State Park. There he jumped into his car and started to drive away.
 
 
 5
 Immediately thereafter, the defendant police officers drove by in the course of a routine police patrol. Mrs. Gagnon ran toward their car shouting, "Get that sonofabitch,"[1] and waving her gun. She urged the officers to "get" the departing vehicle, claiming that its driver had tried to rape her. Officer Ball got out of the police car, disarmed Mrs. Gagnon, and, without inquiring into the circumstances of her complaint, arrested her.
 
 
 6
 After allowing Mrs. Gagnon time to change from her night clothes, defendants took her to police headquarters, where she was charged with breach of the peace, Conn.Gen.Stat. Sec. 53a-181, and carrying a dangerous weapon, Conn.Gen.Stat. Sec. 53-206. Mrs. Gagnon was held in detention for more than one hour and was thereafter obliged to make several court appearances, incurring legal expenses of approximately $500. In August, 1978, almost one year after her arrest, the charges against Mrs. Gagnon were nolled.
 
 
 7
 Mrs. Gagnon then brought this suit against defendants, alleging that her constitutional rights had been denied by an unlawful arrest in violation of 42 U.S.C. Sec. 1983. The jury, answering interrogatories, found in her favor and awarded compensatory damages of $5,000 against each defendant,[2] and punitive damages of $4,000 and $1,000 against Officers Ball and Laplaca, respectively. The District Court set aside the award of punitive damages against Officer Laplaca but otherwise declined to modify the jury's verdict. This appeal followed.
 
 Discussion
 
 8
 Appellants principally urge that the record contained uncontroverted evidence establishing probable cause to arrest,[3] and accordingly that they were entitled to judgment notwithstanding the verdict. An examination of the record in the light of applicable Connecticut law indicates that appellants' claim is without merit.
 
 
 9
 To establish probable cause to arrest for breach of peace, appellants rely on uncontroverted evidence showing that Mrs. Gagnon was shouting and using rough language in a public area. Connecticut law, however, proscribes such conduct only if it is undertaken with an "intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof," Conn.Gen.Stat. Sec. 53a-181. Accordingly, to justify rejection of the jury's verdict, appellants must show that no reasonable jury could fail to find that the officers had probable cause to believe that Mrs. Gagnon acted with wrongful intent.
 
 
 10
 The record reveals that no such showing can be made. Officer Laplaca conceded that he observed the fleeing car at which Mrs. Gagnon was pointing and that he understood Mrs. Gagnon to be requesting help. Officer Ball's arrest report shows that he also understood that Mrs. Gagnon was requesting assistance. The jury was entitled to conclude that both officers were aware of Mrs. Gagnon's legitimate reason for shouting, but arrested her nonetheless. It is not a violation of Connecticut's breach of peace statute for a citizen to request, however emphatically, that the police arrest someone who has been observed committing an offense. The evidence created a fair jury question as to whether the officers lacked probable cause to arrest the complainant.
 
 
 11
 Appellants' attempt to establish the existence, as a matter of law, of probable cause on the weapons charge is similarly flawed. Appellants rely on uncontroverted evidence that Mrs. Gagnon was carrying a weapon in a public place. Connecticut, however, allows its citizens to carry weapons in public provided they have a permit. Conn.Gen.Stat. Sec. 53-206. Thus, to justify their arrest on this charge, appellants must show that no reasonable jury could fail to find that the officers had probable cause to believe that Mrs. Gagnon's weapon was carried illegally for lack of a permit.
 
 
 12
 A police officer's belief that a weapon is being carried without a required permit has been found reasonable in circumstances materially different from those presented here. In Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), for example, the Supreme Court held that a reliable informant's tip regarding a suspect's dealings in narcotics justified the arresting officer's belief that the suspect lacked a permit for his gun. This decision was substantially based on the Court's observation that "the surrounding circumstances certainly suggested no lawful explanation for possession of the gun." 407 U.S. at 148-49, 92 S.Ct. at 1924. United States v. Canestri, 518 F.2d 269 (2d Cir.1975), relied on a slightly different rationale. There, this Court, in approving the seizure of a sawed-off shotgun for which no search warrant had been issued, rested decision on the recognition that " 'a sawed-off shotgun in private hands is not an intrinsically innocent object.' " 518 F.2d at 275, quoting Porter v. United States, 335 F.2d 602, 607 (9th Cir.1964), cert. denied, 379 U.S. 983, 85 S.Ct. 695, 13 L.Ed.2d 574 (1965).
 
 
 13
 Both Williams and Canestri turned on the presence of special indicia of suspiciousness provided by the circumstances surrounding the arrest or by the character of the weapon seized. No such indicia are presented here. Appellants were not entitled to infer from Mrs. Gagnon's conceded eccentricity a general unwillingness to comply with the law. Nor was Mrs. Gagnon's pellet gun an intrinsically suspect weapon; though it qualified as a dangerous weapon under state law, it surely was not so alarming as to support a belief that its possession must have been unauthorized. The jury was entitled to reject as unreasonable appellants' assumption that the weapon was carried illegally.[4]
 
 
 14
 Appellants further urge that Officer Ball acted alone in arresting Mrs. Gagnon and that Officer Laplaca should not be held liable for the violation of Mrs. Gagnon's civil rights. We note, however, that Officer Laplaca not only declined to intercede on Mrs. Gagnon's behalf but also assisted Officer Ball in detaining her. This participation in an unlawful arrest suffices to support the jury's verdict against Officer Laplaca. See Nesmith v. Alford, 318 F.2d 110, 119 (5th Cir.1963); cf. Byrd v. Brishke, 466 F.2d 6, 11 (7th Cir.1972) (excessive force).
 
 
 15
 Finally, Officer Ball complains that the record does not justify the jury's award of punitive damages. This argument is defeated by uncontroverted evidence. Although he understood that Mrs. Gagnon was requesting help, Officer Ball made no effort to assist her, nor even to discover whether her complaint was justified. Instead he simply placed Mrs. Gagnon under arrest. Such conduct evidences the reckless disregard for the rights of others that punitive damages are intended to punish and deter. Adickes v. S.H. Kress & Co., 398 U.S. 144, 233-34, 90 S.Ct. 1598, 1642, 26 L.Ed.2d 142 (1970) (opinion of Brennan, J.); see Stolberg v. Members of the Board of Trustees for the State Colleges of the State of Connecticut, 474 F.2d 485, 489 (2d Cir.1973); Lee v. Southern Home Sites Corp., 429 F.2d 290, 294 (5th Cir.1970). The jury was instructed that punitive damages might be awarded if a defendant was found to have acted "maliciously, wantonly or oppressively," and that "an act is wantonly done if done recklessly, with a careless disregard or indifference to the right of a person." Neither defendant objected to the charge.
 
 
 16
 The judgment of the District Court is affirmed.
 
 
 
 [1]
 We accept the court reporter's view that this phrase has entered the language as a single word
 
 
 [2]
 The special interrogatories submitted to the jury explicitly invited them to answer separately as to each defendant the amount of compensatory damages to be recovered by the plaintiff. No objection to this form of verdict was made at trial, nor is any issue concerning the separate awards of compensatory damages raised on appeal. Nevertheless, since the problem may recur, we note the inadvisability of the procedure used. Where, as here, defendants, if liable at all, are liable for causing the same injury, a jury given special interrogatories should be asked what amount of damages the plaintiff has suffered. All defendants found liable for the injury are then jointly and severally liable for the single award of compensatory damages. If the evidence permits a finding that more than one type of injury was suffered (e.g., false arrest and unlawful search) and that not all of the defendants may have caused each of the injuries, a special interrogatory should permit the jury to determine the compensatory damages for each injury; such damages are then properly awarded, jointly and severally, against all officers liable for such damages. Punitive damages, however, are properly assessed separately against individual defendants
 
 
 [3]
 Appellants make no claim that the charge, to which they did not object, incorrectly set forth the standard of probable cause, nor did they assert at trial a defense of good faith, see Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 456 F.2d 1339, 1348 (2d Cir.1972). As to a claim of unlawful arrest, which can succeed only if an officer is found to have lacked a reasonable basis for belief that a crime had been committed, the failure to assert a good faith defense, which itself has as a component the objective reasonableness of the officer's good faith belief, may be inconsequential
 
 
 [4]
 We do not doubt that an officer, confronting a person carrying a dangerous weapon, may make an investigative stop, Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), disarm the person, and ascertain whether the weapon is being lawfully carried