David ISHAY, Plaintiff,

v.

The CITY OF NEW YORK, Police Officer Michael Dorto, and Police Officer "John" Craig, Defendants.

No. 96–CV–5829 (FB).

United States District Court, E.D. New York.

Aug. 13, 2001.

---

David B. Karel, Esq., Wilkofsky, Friedman, Karel & Cummins, New York, for the Plaintiff.

Michael D. Hess, Esq., Corporation Counsel of the City of New York, By Kevin Dantzler, Esq., New York, for the Defendants.

## MEMORANDUM AND ORDER

BLOCK, District Judge.

Plaintiff David Ishay ("Ishay") brought this action pursuant to 42 U.S.C. § 1983 and New York law alleging various constitutional and state law violations as a result of the allegedly unlawful seizure of his automobile and his arrest, imprisonment and prosecution by officers of the New York City police department. On April 3, 2001, following a four-day trial, a jury returned a verdict in favor of Ishay, and awarded him damages against the officers. Defendants now move for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure, asserting that the court erred in certain evidentiary rulings and in the charge to the jury.[1] For the reasons set forth below, the motion is denied.

## BACKGROUND

The following facts are drawn from the testimony at trial: On July 22, 1996, New York City police officer Michael Dorto ("Dorto") spotted a Porsche automobile driven by Ishay making an unsignaled lane change. He conducted a routine check of the car's registration data and learned that the Porsche was registered as a 1983 model. Because the car appeared to Dorto to be a newer model, he decided to pull it over. Upon inspecting the car and finding mismatched vehicle identification numbers, Dorto determined the car was probably a stolen vehicle. Deciding that he needed time to further investigate, Dorto allowed Ishay to go without issuing him a summons.

On August 20, 1996, Dorto and another police officer, Michael Craig ("Craig"), came to the Brooklyn warehouse where Ishay operated a garment business, and requested that he come outside to speak with them. Ishay met the officers on the street just outside the warehouse door. Dorto then engaged Ishay in a conversation about the Porsche. Ishay became annoyed by Dorto's questions and told him to "stop playing this charade." Tr. 378.[2] Dorto responded by telling Ishay that the Porsche was a stolen car, and that he had come to seize it. Ishay told the officers that he wanted to consult his attorney regarding the matter, and turned to walk back into the warehouse. As Ishay entered the building, he noticed that Dorto had followed him inside. When Ishay objected and asked if Dorto had a warrant, Dorto turned him around, "smashed" him against a wall, handcuffed him and said, "Here's my warrant." Tr. 382. Dorto and Craig then compelled Ishay to give them the keys to the Porsche and show them where he kept it. The officers then brought Ishay to the 78th Precinct where

---

1. While defendants style their motion as being brought under both Fed.R.Civ.P. 50(b) and 59, the substance of their argument is made in support of a new trial only. The Court, therefore, construes the motion as seeking relief exclusively under Rule 59(a).

2. "Tr." refers to the trial transcript.

he was placed in a cell. Dorto later executed a criminal complaint against Ishay, charging him with aggravated unlicensed operation of a motor vehicle on July 22, 1996. Ishay's license, however, had not been suspended until July 31, 1996, and was not under suspension on July 22, 1996. On the basis of the complaint, Ishay was jailed overnight. The criminal charge remained pending against Ishay for several weeks before it was dismissed at the request of the district attorney.

The Court presented the jury with questions regarding four claims: unlawful seizure of the Porsche by both Dorto and Craig, and—with respect to Dorto only—false arrest, false imprisonment and malicious prosecution. Essentially, the jury was asked to determine if Dorto and Craig had probable cause to support their various actions against Ishay. The jury found for the defendants on the false arrest claim;[3] however, it returned a verdict in favor of Ishay on the three other claims. Both Dorto and Craig were found to have unlawfully seized the Porshe, and the jury awarded Ishay nominal damages of $1.00. Also in respect to this claim, Ishay was awarded punitive damages of $1.00 against Dorto. The jury further found Dorto liable for false imprisonment, and awarded compensatory damages of $1,000 and punitive damages of $10,000. Finally, with respect to malicious prosecution, Dorto was found liable for nominal damages of $1.00 and punitive damages of $10,000.

## DISCUSSION

### I. Standard of Review on a Motion for a New Trial

█ Rule 59(a) of the Federal Rules of Civil Procedure provides: "A new trial may be granted ... for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." A court may grant a new trial if, for example, "substantial errors were made in admitting evidence, or in charging the jury." *Sharkey v. Lasmo*, 55 F.Supp.2d 279, 289 (S.D.N.Y.1999). While rulings on motions under Rule 59(a) are "committed to the sound discretion" of the trial court, *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 143 (2d Cir.1998), "[a] motion for a new trial ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Hugo Boss Fashions, Inc. v. Federal Ins. Co.*, 252 F.3d 608, 623 (2d Cir.2001).

### II. Evidentiary Errors

█ Defendants contend that a new trial is warranted because the Court erred in a number of respects by precluding certain testimony and documents from evidence. When dealing with evidentiary rulings, Rule 61 of the Federal Rules of Civil Procedure tracks the general principles applicable to Rule 59 motions. *See* Fed. R.Civ.P. 61 (an error in the admission or exclusion of evidence is not a ground for granting a new trial unless the "substantial rights" of a party have been affected and refusal to grant a new trial would be inconsistent with "substantial justice"); *see also* 12 James Wm. Moore et al., Moore's Federal Practice § 59.13[2][b][E] (3d ed.1997) ("a court's failure to admit highly probative evidence that is likely to have a profound impact on the outcome of the trial may also be grounds for a new trial").

---

**3.** The jury found for Dorto on this claim because it determined that he had probable cause to arrest Ishay for criminal possession of stolen property. Ultimately, Dorto only charged Ishay with aggravated unlicensed operation of a motor vehicle, which was not a basis for the arrest.

Defendants contend that the Court erroneously precluded their counsel from questioning Ishay on cross examination about Ishay's failure to answer a speeding ticket issued to him on May 25, 1996. Defendants also contend that the Court committed error by preventing Dorto from being questioned about the contents of a police abstract of Ishay's driving record in an effort to establish that Dorto believed that Ishay's license was under suspension on July 22, 1996. Central to each of these rulings was the issue of whether Dorto, on August 20, 1996, had probable cause to charge Ishay with committing the crime of aggravated unlicensed operation of a motor vehicle on July 22, 1996.

█ As the Court instructed the jury, in order to have probable cause to make an arrest or charge an offense "a police officer must have information that would lead a reasonable person who possesses the same official expertise as the officer to conclude that the person being arrested has committed . . . a crime." Tr. 750; *see also Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir.1996). What was clear at trial is that on July 22, 1996, Ishay's license was *not* suspended. The specific issue, therefore, was whether a reasonable police officer possessing Dorto's knowledge on the date he arrested Ishay, August 20, 1996, would have had reason to believe that Ishay's license was under suspension on July 22, 1996.

*A. Speeding Ticket*

In regard to the speeding ticket Ishay received on May 25, 1996, defendants reason for wishing to question Ishay about the ticket was to attempt to adduce that he had not answered the ticket within 10 days. If true, defendants believe that Ishay's license would have been suspended by July 22, 1996. The Court ruled that this speculative line of questioning was irrelevant because the jury's probable cause determination could not turn on whether or not Ishay knew that his license was suspended, *see* Tr. 539–40; rather, the relevant inquiry was whether Dorto had any plausible reason to believe on August 20, 1996 that Ishay's license was under suspension on July 22, 1996.

*B. Driver's License Abstract*

In respect to Dorto's knowledge, defendants contend that a driver's license abstract reviewed by Dorto following Ishay's arrest should have been admitted in evidence because it "had alerted [Dorto] to the fact that plaintiff's license was suspended" on July 22, 1996. Defs.' Mem. Supp. Mot., at 5. Defendants argue that the abstract reflects that Ishay had failed to answer the summons issued on May 25 1996; therefore, it was reasonable for Dorto to conclude that Ishay's license must have been under suspension on July 22, 1996, *see id.* at 6, even though the abstract showed that the license was not suspended until July 31, 1996. The abstract, which was marked for identification at trial as Exhibit J, shows that Ishay's license had been suspended on a number of occasions, but was not under suspension on July 22, 1996.[4] Even though there was no evidence to suggest that Ishay's license had been suspended on that date, Dorto was given every opportunity to provide a reason supporting probable cause for his actions.

---

4. The abstract is titled "Finest Message Switching System NYSPIN Response Screen" and dated August 20, 1996. It clearly reflects that Ishay was cited for driving 68 M.P.H. in a 40 M.P.H. zone on May 25, 1996, and was convicted for that violation on July 31, 1996.

The abstract further reflects that Ishay's license was suspended on July 31, 1996 for failure to answer a summons. The abstract also records suspensions in 1992 and 1993, and a revocation in 1991. *See* Dantzler Decl. Ex. C.

Dorto, however, testified that when on August 20, 1996 he signed the complaint charging Ishay with aggravated unlicensed operation of a motor vehicle on July 22, 1996, he did not know whether a suspension was in effect on July 22, 1996. *See* Tr. 137–39. Even as of the date of the trial, years later, Dorto could not say that Ishay's license was suspended on July 22, 1996, *see* Tr. 170; moreover, he conceded that he had reviewed the abstract and that it showed that Ishay's license was not suspended after the May 25, 1996 speeding ticket until July 31, 1996. *See* Tr. 170–71.

When, on re-cross examination, defendants' trial counsel attempted to question Dorto about the abstract, the following colloquy ensued:

THE COURT: One second. What do you want to do with this document?

[DEFENDANTS' COUNSEL]: I want for the testimony to be clear as he has previously testified in his deposition that he was not sure how far back the suspensions go. It's true there is a suspension on July 31st. There may well have been earlier suspensions.

\*     \*     \*     \*     \*     \*

THE COURT: ... There is a suspension back in '93. There is a suspension back in 1992, There is a revocation back in 1991. It was cleared in 1994. There was a suspension on July 31, 1996. The only thing that's relevant is whether or not there was a suspension on July 22nd.

[DEFENDANTS' COUNSEL]: That's right.

THE COURT: 1996. There is nothing here that says there was such a suspension.

\*     \*     \*     \*     \*     \*

[DEFENDANTS' COUNSEL]: I want to be able to establish and ask him about prior suspensions because not all suspensions show up on this record and, in fact, there are earlier suspensions.

THE COURT: That's irrelevant here. You want to ask whether he has any information that would lead him to believe rightly or wrongly that there was a suspension on July 22, 1996, that may be an appropriate question.

\*     \*     \*     \*     \*     \*

THE COURT: If you want to ask him anything ... as to why it is he wrote down [that on] July 22, 1996 there was a suspension ....

\*     \*     \*     \*     \*     \*

THE COURT: It's not in evidence. Be careful about your questions. Nothing about prior suspensions is relevant.

Tr. 262–62. The Court abides by this ruling since the abstract could not have provided a reasonable police officer with probable cause to believe that a license suspension was in effect on July 22, 1996.[5]

### III. Punitive Damages

█ Defendants assert that the Court erred by permitting the jury to award punitive damages for both the false imprisonment claim and the malicious prosecution claim because both claims "are subsumed under a single act ...

---

**5.** Because defendants' remaining contentions concerning the Court's evidentiary rulings are founded on the presumption that the abstract was erroneously precluded, the Court need not address them. Defendants specifically argue that (1) the jury asked to see the precluded abstract; (2) the Court refused to read back to the jury portions of the trial transcript reflecting defense counsel's attempt to use the abstract in his examination of Dorto, and (3) the Court should not have told the jury that Ishay's license had been suspended on July 31, 1996, but, instead, should have allowed the jury to determine date of suspension by reference to the abstract.

Dorto's signing of the accusatory instrument." Defs.' Mem. Supp. Mot., at 10. The Court notes that defendants failed to object at trial to the Court's charge concerning the permissibility of separate punitive damages awards for each of these claims. *See* Tr. 782–83.[6]

■ "A jury may be permitted to award punitive damages in a § 1983 action when it finds that the defendant's violation of federal law was intentional or when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *McCardle v. Haddad*, 131 F.3d 43, 52–53 (2d Cir.1997) (citations and internal quotation marks omitted). Although the Second Circuit has "expressed some preference for an aggregate [punitive damages] award in civil rights cases," *King v. Macri*, 993 F.2d 294, 299 (2d Cir.1993) (citing *Gagnon v. Ball*, 696 F.2d 17, 19 n. 2 (2d Cir.1982)), district courts retain discretion to permit juries to make separate punitive damages awards for each component of a defendant's misconduct provided that the court bears in mind the risk of an excessive award. *See id.*

The Court carefully instructed the jury on the separate factual bases for Ishay's false imprisonment and malicious prosecution claims; the *sine qua non* of a false imprisonment claim being imprisonment, while a malicious prosecution claim has at its core a criminal proceeding. *See* Tr. 754–56; *see also Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir.1997) (malicious prosecution); *Lowth*, 82 F.3d at 569 (false imprisonment). In respect to false imprisonment, the jury was instructed to find Dorto liable if "[a]s a result of the criminal complaint lodged against [Ishay without probable cause] for aggravated unlicenced operation of a motor vehicle, Mr. Ishay was [im]prisoned overnight until he was arraigned the next day." Tr. 754. In respect to malicious prosecution, however, the jury was instructed to find Dorto liable only if it had determined that he lacked probable cause to charge Ishay with aggravated unlicensed operation of a motor vehicle, and further determined that Dorto "initiate[d ] a criminal proceeding against Mr. Ishay . . . with malice." Tr. 756.

The jury had placed before it sharply drawn factual distinctions between the two claims that could serve to justify separate punitive damages awards. The false imprisonment claim concerned only Ishay's overnight imprisonment, while the malicious prosecution claim concerned the criminal prosecution that Dorto initiated against Ishay, which remained pending for several weeks. In any event, the Court instructed the jury that if it awarded punitive damages with respect to more than one claim, "[y]ou don't pile it on over and over again. Each of these claims has to serve as a basis for the awarding of punitive damages because of the nature of the violation in respect to that claim." Tr. 783.

---

6. A party's failure to object to a punitive damages charge may be fatal to a request for a new trial on the ground that the charge was erroneous. *See* Fed.R.Civ.P. 51 ("[n]o party may assign as error the giving or failure to give an instruction unless the party objects thereto before the jury retires to consider its verdict . . . ."); *see also Caruso v. Forslund*, 47 F.3d 27, 30–31 (2d Cir.1995) (affirming denial of new trial on punitive damages where plaintiff, having failed to object that no such jury charge was given, "waived her right to a determination of whether she is entitled to punitive damages"). However, a new trial may nonetheless be granted if the alleged mistake constitutes "plain error." *Bender v. City of New York*, 78 F.3d 787, 795 (2d Cir. 1996). "An error is plain if it results in a miscarriage of justice, or if it is an obvious instance of misapplied law." *Latsis v. Chandris, Inc.*, 20 F.3d 45, 49 (2d Cir.1994) (internal quotation marks omitted).

The Court is confident that the jury understood these instructions. The jury found that Dorto, lacking probable cause, had imprisoned Ishay overnight; the jury separately determined that Dorto maliciously initiated and permitted the continuation of a criminal proceeding against Ishay. The separate punitive damages awards were not excessive, and were appropriate to vindicate Ishay's separate rights not to be falsely imprisoned and not to have a baseless prosecution maliciously initiated and continued against him.

## CONCLUSION

For the reasons set forth above, defendants' motion for a new trial is denied.

**SO ORDERED**