**John Robert ZELLNER, Plaintiff,**

**v.**

**Trooper Robert G. SUMMERLIN and Major Weber, Defendants.**

**No. 02 CV 95(SLT).**

United States District Court, E.D. New York.

Sept. 6, 2005.

Frederick K. Brewington, Law Offices of Frederick K. Brewington, Hempstead, NY, for Plaintiff.

Anne C. Leahey, Office of Eliot Spitzer, Hauppauge, NY, for Defendants.

## MEMORANDUM & ORDER

TOWNES, District Judge.

Defendants move for judgment as a matter of law pursuant to Rule 50(b) and Plaintiff moves for a new trial pursuant to Rule 49. Based on the written submissions of the parties and for the reasons set forth below, Defendants' motion is

GRANTED and Plaintiff's motion is DENIED.

## BACKGROUND

Robert Zellner ("Plaintiff") brought this action against Trooper Robert G. Summerlin ("Summerlin") and Major Thomas Weber ("Weber") (collectively, "the Defendants"), two members of the New York State Police Department, alleging violations of 42 U.S.C. § 1983 and of state law [1] stemming from his arrest on February 25, 2000, for disorderly conduct and resisting arrest. A trial was held between November 16 and November 26, 2004. At the close of the Plaintiff's case and again at the close of all evidence, Defendants moved to dismiss Plaintiff's claims as a matter of law. The Court denied the motions. At the close of the trial, the jury found the Defendants liable under section 1983 for false arrest and malicious prosecution, but held that the Defendants had not used excessive force in effectuating the arrest. The jury awarded Plaintiff $80,000 in compensatory damages, split equally between the two Defendants. Following a hearing on punitive damages, the jury awarded $5000 in punitive damages against Weber and $500 against Summerlin. Defendants subsequently renewed their motion for judgment as a matter of law pursuant to Rule 50(b) of the Federal Rules of Civil Procedure and Plaintiff moved for a new trial under Rule 49.

## DISCUSSION

### I. Defendants' Rule 50(b) Motion for Judgment as a Matter of Law

#### A. Standard of Review

The Second Circuit has described the standard for ruling on a renewed motion for Judgment as a Matter of Law ("JMOL") made pursuant to Rule 50(b) as follows:

In ruling on a motion for judgment as a matter of law, a district court must consider the evidence in the light most favorable to the non-movant and draw all reasonable inferences the jury could have drawn. The district court may set aside a verdict only where there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or where the evidence overwhelmingly compels a different verdict.

*Cweklinsky v. Mobil Chem. Co.*, 364 F.3d 68, 75 (2d Cir.2004) (internal quotation marks and citations omitted).

#### B. Sufficiency of the Evidence as to the False Arrest Charge

█ A claim for unlawful arrest under section 1983 will lie where the police do not have probable cause to make an arrest. 42 U.S.C. § 1983; *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996). Probable cause to arrest exists when authorities have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to cause a person of reasonable caution to believe that the person to be arrested has committed or is committing a crime. *Weyant,* 101 F.3d at 852.

█ Defendants argue that they had probable cause to arrest Plaintiff based on the fact that he intentionally blocked the truck as it was attempting to enter the construction site, which Defendants argue is incontrovertibly shown by the videotape, and initiated a confrontation with Weber during this tense standoff by urging Weber to hold off on taking any action until the protective order arrived in a manner that was "obstructive and distracting, in view of the imminent crisis posed by the truck." However, the video itself was not conclusive as to what happened when the truck attempted to turn into the site, and the testimony at trial was contradictory, with

---

**1.** Plaintiff's state law claims were subsequently dismissed on statute of limitations grounds.

Plaintiff and members of the Shinnecock tribe testifying that Plaintiff did not obstruct the path of the truck but merely engaged Weber in conversation in an attempt to maintain the status· quo until the restraining order arrived. The jury was free to consider all of the evidence and to weigh the credibility of the witnesses. In deciding in Plaintiff's favor on the false arrest claim, the jury found Plaintiff's account of the events worthy of more credence. This Court cannot now re-weigh the conflicting evidence or draw its own conclusions as to the credibility of the witnesses at trial, for to do so would be to substitute the Court's judgment for that of the jury, which is not permitted. *Smith v. Lightning Bolt Prods., Inc.*, 861 F.2d 363, 367 (2d Cir.1988). Thus, the Court finds that there is sufficient evidence to sustain the jury's finding that Plaintiff's arrest was not based on probable cause.

### C. Sufficiency of the Evidence as to the Malicious Prosecution Charge

In order to prevail on a malicious prosecution charge under section 1983, a plaintiff must present evidence demonstrating the existence of the following elements: (1) the initiation of a criminal proceeding; (2) its termination favorably to plaintiff; (3) lack of probable cause to believe the proceeding could succeed; (4) malice; and (5) a restraint on plaintiff's post-arraignment liberty sufficient to implicate plaintiff's Fourth Amendment rights. *Rohman v. New York City Transit Auth.*, 215 F.3d 208, 215 (2d Cir.2000).

Defendants argue that Plaintiff failed to demonstrate that the officers lacked probable cause to initiate the prosecution and that they harbored malice towards Plaintiff. As discussed above, there was evidence adduced at trial to support the jury's verdict that Defendants lacked probable cause to arrest Plaintiff and there was no suggestion that Defendants

thereafter obtained further evidence giving them probable cause to believe Plaintiff was guilty of the crimes charged against him. *See Carson v. Lewis*, 35 F.Supp.2d 250, 263 (E.D.N.Y.1999) (Seybert, J.). With respect to malice, the Second Circuit has held that where "a jury could find that probable cause for the charges against the plaintiff[ ] was lacking . . . that finding alone would support an inference of malice." *Ricciuti v. New York City Transit Auth.*, 124 ·F.3d 123, 131 (2d Cir.1997). Thus, the Court will not disturb the jury's finding that Defendants acted without probable cause and with malice in prosecuting Plaintiff.

### D. Qualified Immunity

Defendants argue that, even if they did lack probable cause to arrest plaintiff and charge him with disorderly conduct, they are protected from liability under the doctrine of qualified immunity. Qualified immunity "shields government officials performing discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Zahra v. Town of Southold*, 48 F.3d 674, 686 (2d Cir.1995) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). A right may only be considered "clearly established" for purposes of the qualified immunity analysis if " 'the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). Thus, the "relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that *his conduct* was unlawful

in the situation he confronted." *Id.* Thus, while the right to be free from arrest and prosecution absent probable cause is, in a general sense, a clearly established constitutional right, for the purposes of determining whether the Defendants are entitled to qualified immunity, the Court must consider whether the officers "reasonably should have comprehended that their specific actions transgressed that 'clearly established' right." *Zahra,* 48 F.3d at 687 (internal quotation marks and citation omitted); *Luna v. Pico,* 356 F.3d 481, 490 (2d Cir.2004) ("[E]ven assuming a state official violates a plaintiff's constitutional rights, the official is protected nonetheless if he objectively and reasonably believed that he was acting lawfully.").

Plaintiff was arrested pursuant to New York's disorderly conduct statute, which in relevant part prohibits the obstruction of vehicular or pedestrian traffic with the intent to cause public inconvenience, annoyance, or alarm or recklessly creating a risk thereof. N.Y. Penal Law § 240.20(5). The evidence presented at trial, taken in the light most favorable to the Plaintiff, as is required on a motion for judgment as a matter of law, established the following events leading up to Plaintiff's arrest: (1) there was a large crowd of demonstrators at the construction site who had been there for several hours; (2) the demonstrators were instructed by the police to stay off of the road and the driveway allowing ingress to and egress from the site; (3) a construction truck arrived on the scene and the driver indicated his intention to enter the site through the driveway by turning on his blinker; (4) the truck remained immobile in the road for nearly five minutes, blocking traffic completely from at least one direction; (5) while the truck was stopped in the road, demonstrators, including children, walked and ran around it; (6) Plaintiff walked into the driveway and turned to face the road where the truck was waiting; (7) Plaintiff

engaged Weber in conversation and urged Weber not to take any action until a restraining order, which was expected, arrived, to which Weber responded that the road needed to remain clear; and (8) at some point Plaintiff made a crouching or squatting motion towards the ground.

■ The Court must consider all of these events in context in deciding whether it would have been clear to a reasonable officer that there was no probable cause to arrest Plaintiff for disorderly conduct. *See Decker v. Campus,* 981 F.Supp. 851, 858–59 (S.D.N.Y.1997), (citing the Court of Appeals' holding in *People v. Tichenor,* 89 N.Y.2d 769, 658 N.Y.S.2d 233, 680 N.E.2d 606 (1997), that the proper inquiry in considering a charge of disorderly conduct is "not the consideration of specific contact between defendant and police, but rather the entire incident surrounding the arrest"). It is apparent from the record that Defendants were faced with a tense situation for the several minutes when the construction truck was attempting to enter a construction site flanked on all sides by protestors and their children. It is further clear that Plaintiff's actions in engaging Major Weber in conversation at that point, thereby distracting his attention from the situation, and in making some sort of movement that could have been interpreted as an attempt to sit down in the path of the truck, only exacerbated the situation. Thus, while Defendants may have acted without justifiable cause in arresting Plaintiff, the Court cannot say that their "judgment was so flawed that no reasonable officer would have made a similar choice." *Lennon v. Miller,* 66 F.3d 416, 424–25 (2d Cir.1995); *see also Hunter v. Bryant,* 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) ("The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly vio-

late the law.' ") (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 343, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). Thus, the Court finds that Defendants are entitled to qualified immunity on the false arrest and malicious prosecution charges.

## E. Defendants' Remaining Contentions

As the Court finds that the Defendants are entitled to qualified immunity on the claims against them, it is unnecessary to address their remaining contentions that (1) the jury instruction on compensatory damages resulted in a duplicate award or (2) the punitive damages award is unwarranted under the facts of the case and should be stricken. In any event, such claims are without merit, as discussed below.

### 1. Compensatory Damages Award

Defendants argue that the verdict sheet erroneously asked the jurors to enter a separate compensatory damages award against each defendant when they should have been held jointly and severally liable for a single sum. In support, Defendants cite to *Bender v. City of New York*, 78 F.3d 787, 793 (2d Cir.1996), in which the court held that the proper procedure for determining compensatory damages is to ask the jury "what amount of money reasonably compensates the plaintiff for the injury and which of the defendants are liable for causing that injury," noting that "[o]nly punitive damages vary from one defendant to another." The court then held that the jury's separate compensatory damages award against each defendant resulted in a duplicate award which, in addition to the duplication that occurred between the awards for the various claims at issue, resulted in an excessive damages award and required partial remittur or a new trial on damages. *Id.* at 793–95; *see also Rodick v. City of Schenectady*, 1 F.3d 1341, 1348 (2d Cir.1993) (holding that the trial court's failure to instruct the jury that

the defendants were jointly and severally liable for any compensatory damages awarded, combined with a verdict sheet placing separate entries next to each officer's name, "was an invitation to the jury to come up with an erroneous damage calculation"); *Gagnon v. Ball*, 696 F.2d 17, 19 n. 2 (2d Cir.1982). ("The special interrogatories submitted to the jury explicitly invited them to answer separately as to each defendant the amount of compensatory damages to be recovered by the plaintiff...we note the inadvisability of the procedure used. Where, as here, defendants, if liable at all, are liable for causing the same injury, a jury given special interrogatories should be asked what amount of damages the plaintiff has suffered. All defendants found liable for the injury are then jointly and severally liable for the single award of compensatory damages.")

Plaintiff does not directly respond to this argument, and Defendants appear to be correct in arguing that the verdict sheet should not have asked for separate compensatory damages awards against each defendant. However, Defendants waived the right to object to the instruction or the verdict sheet by failing to object at trial. *See SCS Communs., Inc. v. Herrick Co.*, 360 F.3d 329, 343 (2d Cir.2004) ("Under Fed.R.Civ.P. 51, 'a party who fails to object to a jury instruction at trial waives the right to make that instruction the basis for an appeal.' ") (quoting *Fogarty v. Near North Ins. Brokerage*, 162 F.3d 74, 79 (2d Cir.1998)). Where, as here, a defendant fails to object to a jury instruction before deliberations begin, "a subsequent challenge based on that charge should be entertained only if the alleged errors are 'fundamental.' " *Shade ex rel. Velez Shade v. Hous. Auth. of New Haven*, 251 F.3d 307, 312 (2d Cir. 2001) (citation omitted). "Fundamental error is a more exacting standard than the

'plain error' standard in the criminal context and must be 'so serious and flagrant that it goes to the very integrity of the trial.'" *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.,* 314 F.3d 48, 61 (2d Cir.2002) (quoting *Shade,* 251 F.3d at 313).

In *Shade,* the court declined to decide whether it was error for the court to fail to instruct the jury regarding joint and several liability and to call for apportionment among the defendants, but held that any error that had occurred could not be considered fundamental and therefore did not require a new trial on damages. *Shade,* 251 F.3d at 313. The court in *Shade* distinguished its prior decision in *Rodick* (cited above), noting that in that case the combined error of failing to instruct on joint and several liability and of having a verdict that was "egregiously inconsisten[t]" with the law of respondeat superior led the court to conclude that allowing the verdict to stand, even in the absence of a proper objection at trial, would be a "miscarriage of justice." *Id.*

■ Defendants fail to argue that the error here was so fundamental that it requires a new trial on damages despite their failure to object at trial. Nor is there evidence that any error can be considered fundamental, as the Court's instructions in this case did not generate the type of confusion that concerned the courts in the cases cited by Defendants. The Court clearly instructed the jury in the charge to "consider[ ] each defendant separately" and to report its verdict with respect to compensatory damages "separately as to each defendant." (Tr. 926.) Thus, this case is analogous to *Aldrich v. Thomson McKinnon Securities, Inc.,* 756 F.2d 243, 248 (2d Cir.1985), in which the court held that the jury intended to award $175,000 in compensatory damages where it separately assessed damages against each defendant for $87,500. While noting

that a verdict sheet providing for separate assessment of compensatory damages as to each defendant "should be avoided where defendants, if liable, are liable jointly and severally for a single injury," the court went on to hold that there was no risk of duplicate awards as it was clear that the jurors had separately assessed compensatory damages against each defendant. *Id.*

■ Defendants argue, in the alternative, that an award of $80,000 in compensatory damages is excessive. In this circuit, the standard for reviewing a compensatory damages award is " 'whether the award is so high as to shock the judicial conscience and constitute a denial of justice.'" *DiSorbo v. Hoy,* 343 F.3d 172, 183 (2d Cir.2003) (quoting *Mathie v. Fries,* 121 F.3d 808, 813 (2d Cir.1997)). This determination "should include consideration of the amounts awarded in other, comparable cases." *Id.* (internal quotation marks and citations omitted). The court's task, however, "is not to balance the number of high and low awards and reject the verdict in the instant case if the number of lower awards is greater. Rather, [the court must] inquire whether the [jury's] verdict is within [a] reasonable range." *Ismail v. Cohen,* 899 F.2d 183, 187 (2d Cir.1990).

With respect to the false arrest and malicious prosecution counts found by the jury, the evidence at trial, taken in the light most favorable to Plaintiff, indicated that Plaintiff was falsely imprisoned overnight, handcuffed to a bench for several hours, denied his heart medication for several hours, denied a phone call to seek representation, and was forced to come to court to defend the criminal prosecution against him over twelve times in a year and a half until the case was dismissed. Looking at compensatory damage awards in similar cases, it appears that, while the award in this case is somewhat higher than

average, it is still within a "reasonable range." *See Gentile v. County of Suffolk*, 926 F.2d 142, 153–54 (2d Cir.1991) (upholding $150,000 damage award where plaintiff was falsely imprisoned for several days and endured an extended period of malicious prosecution including a trial and criminal conviction, which resulted in pain and suffering, psychological trauma, loss of job opportunities, and attorney's fees in the range of $ 45,000); *Gardner v. Federated Dept. Stores, Inc.*, 907 F.2d 1348 (2d Cir.1990) (court reduced award of $150,000 to $50,000 for loss of liberty that lasted eight hours, after which charges were dropped); *Martinez v. Gayson*, 1998 WL 564385, *2, 1998 U.S. Dist. LEXIS 12281, at *6 (E.D.N.Y. June 30, 1998) (Glasser, J.) (ordering remittur of $160,000 in false arrest case, leaving $150,000 of award intact, where plaintiff was held in custody for approximately five hours and was humiliated but suffered no physical injuries); *Cf. Hygh v. Jacobs*, 961 F.2d 359 (2d Cir.1992) ($65,000 award for false arrest held excessive and new trial ordered where plaintiff was held for less than four hours, during which time he was transported, booked, taken to a local hospital for treatment and arraigned, all the while handcuffed and prevented from placing any telephone calls); *Peterson v. County of Nassau*, 995 F.Supp. 305, 320–21 (E.D.N.Y.1998) (Seybert, J.) (compensatory damages of $ 160,-000 reduced to $ 15,000 where suspect was falsely arrested and detained, without injury or mistreatment, for three hours and formal charges were never filed).

## 2. Punitive Damages Award

■ Defendants argue that the $5,500 award of punitive damages should be stricken. An award of punitive damages should be reversed only if it is "so high as to shock the judicial conscience and constitute a denial of justice." *Vasbinder v. Scott*, 976 F.2d 118, 121 (2d Cir.1992) (quoting *Hughes v. Patrolmen's*

*Benevolent Assoc.*, 850 F.2d 876, 883 (2d Cir.1988)). The purpose of punitive damages is "to punish the defendant for his willful or malicious conduct and to deter others from similar behavior." *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 n. 9, 106 S.Ct. 2537, 91 L.Ed.2d 249. Punitive damages are available in section 1983 cases where "the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983); *McCardle v. Haddad*, 131 F.3d 43, 52–53 (2d Cir.1997).

■ As noted above, the jury found that Defendants, lacking probable cause, arrested Plaintiff and kept him in jail overnight, and further found that they maliciously initiated and permitted the continuation of criminal proceedings against Plaintiff for over a year and a half, requiring Plaintiff to make over a dozen court appearances, before the case was finally dismissed for failure to prosecute. In a factually analogous case from this district, the court upheld a jury's punitive damage awards of $10,000 for false imprisonment and $10,000 for malicious prosecution, noting that the awards were "appropriate to vindicate [Plaintiff's] . . . rights not to be falsely imprisoned and not to have a baseless prosecution maliciously initiated and continued against him." *Ishay v. City of New York*, 158 F.Supp.2d 261, 266–67 (E.D.N.Y.2001) (Block, J.); *Sulkowska v. City of New York*, 129 F.Supp.2d 274, 309–10 (S.D.N.Y.2001) (assessing $7,500 in punitive damages against defendant police officer for false arrest and malicious prosecution where plaintiff was kept in jail overnight, handcuffed to the bars of the cell for part of the time, denied asthma medication, and the charges against her were continued for over two months before be-

ing dismissed by the prosecutor); *Martinez*, 1998 WL 564385, \*\*3–4, 1998 U.S. Dist. LEXIS 12281, at \*8–10 (affirming jury award of $ 10,000 punitive damages in case involving false arrest and malicious prosecution where plaintiff was confined for five hours and suffered no injuries). Thus, the jury's award of $5,500 in punitive damages is within the reasonable range and does not constitute a denial of justice.

## II. Plaintiff's Rule 59 Motion for a New Trial

### A. Instructions on Excessive Force

 Federal Rule of Civil Procedure 59(a) vests the Court with discretion to order a new trial "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed.R.Civ.P. 59(a). A trial court should only grant a motion for a new trial when it is "convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Smith*, 861 F.2d at 370. Where the request for a new trial is based on an alleged error in the jury charge, a new trial is to be granted only when, " 'taken as a whole, the jury instructions gave a misleading impression or inadequate understanding of the law.' " *Luciano v. Olsten Corp.*, 110 F.3d 210, 218 (2d Cir.1997) (quoting *BAII Banking Corp. v. UPG, Inc.*, 985 F.2d 685, 696 (2d Cir. 1993)).

Plaintiff argues that the Court should have charged the jury that, should they find in favor of Plaintiff on the false arrest claim, then they must find that any use of force applied by Defendants in effectuating that arrest was excessive. Plaintiff made this argument at trial in conjunction with his opposition to Defendants' Rule 50(a) motion, made at the close of Plaintiff's evidence. The Court, in denying the motion to dismiss, declined to decide whether any use of force exerted in the course of an unlawful arrest is per se excessive, noting that "it doesn't matter in this particular case, because there's an alleged use of force and it's up to the jury whether they decide that is true or not true." (Tr. 947.) Plaintiff raised no objection at that point. Further, Plaintiff did not submit a proposed jury instruction on this issue, and did not object to the Court's charge as given without this instruction.[2] As noted previously, a civil plaintiff's failure to object to a jury instruction before the jury retires to deliberate constitutes waiver unless the error can be deemed "fundamental," meaning that it is "so serious and flagrant that it goes to the very integrity of the trial." *See Fashion Boutique*, 314 F.3d at 61.

 The Court finds that the law of this circuit does not clearly hold that any force exerted during the course of an unlawful arrest is excessive as a matter of law and, therefore, that it was proper not to include a jury instruction to that effect. The Court further holds that, even if the omission of such an instruction were error, it would not rise to the level of a "fundamental" error requiring a new trial.

To support his position, Plaintiff cites to the Second Circuit's decision in *Atkins v. New York City*, 143 F.3d 100 (2d Cir.1998).

---

**2.** While Plaintiff's attorney did re-raise the issue in response to a question posed by the jurors during deliberations, he did not object to the Court's determination that the jurors were asking an unrelated question, lodge an exception to the Court's ruling on the matter, or ask the Court to give a curative instruction to the effect that any force exerted in an arrest lacking in probable cause is excessive. Plaintiff's attorney further commented that "[i]f [the Court's response] doesn't answer [the jury's] question, they are free to write another note." (Tr. 947.) Thus, these comments do not constitute an objection to the failure to charge the jury on this issue.

In *Atkins,* the Second Circuit held that the jury's finding that the defendant had falsely arrested the plaintiff and had used excessive force to effectuate the Terry stop and arrest under section 1983 entitled him to compensatory damages, even in the absence of a specific holding that the plaintiff's injuries were proximately caused by the constitutional violation, because "there was never a moment when [the] force applied by [defendant] could have been found to be lawful." *Id.* at 103. The court explained that, if it assumed that the defendant was entitled to make a Terry stop short of an arrest, then the verdict established that the force used at that point was excessive, and "even if the jury believed that [plaintiff] started to swing at [defendant] (for which he was arrested), *the force used in connection with the arrest was unlawful because the arrest was found to be unlawful." Id.* (emphasis added.)

Plaintiff argues that the language emphasized above constitutes a holding that any force used in connection with an arrest that is found to lack probable cause is, by definition, excessive. A handful of district courts in this circuit have interpreted *Atkins* in this manner. *See Black v. Town of Harrison,* 2002 WL 31002824, \*\*5–6, 2002 U.S. Dist. LEXIS 16597, at \*17 (S.D.N.Y. Sep. 5, 2002) (citing *Atkins* for the proposition that where there has been an unlawful arrest, any degree of force is unreasonable and excessive); *LaLonde v. Bates,* 166 F.Supp.2d 713 (N.D.N.Y.2001) (same); *Scott v. Sinagra,* 167 F.Supp.2d 509 (N.D.N.Y.2001) ("The question of whether the force used was objectively reasonable is made moot if the arrest itself is found to be unlawful. *See Atkins v. New York City,* 143 F.3d 100, 103–04 (2d Cir.1998). If the arrest is unlawful, then the force used by the police officer in effecting this unlawful arrest is also unlawful. *Id.* Admittedly, the officers did use some force. If a jury finds the arrest to be unlawful, then the force used was excessive.").

Nonetheless, it is far from clear that the Second Circuit intended by the use of one ambiguous statement to issue a bright-line holding that, where an arrest is subsequently found to lack probable cause, any force utilized in making the arrest is excessive as a matter of law. Plaintiff fails to cite any additional Second Circuit authority in support of this proposition, and the Court has failed to uncover any. Moreover, such a rule would appear to conflict with the Supreme Court's holding in *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), that *"all* claims that law enforcement officers have used excessive force...in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." Under this test, a court must ask "whether the officers' actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them" at the scene, "rather than with the 20/20 vision of hindsight." *Id.* at 396–97, 109 S.Ct. 1865. Courts are directed to take into account the fact that an officer may have been required to make "a split-second judgment...in circumstances that are tense, uncertain, and rapidly evolving" and to remember that "[n]ot every push or shove, even if it may later seem unnecessary in this peace of a judge's chambers, violates the Fourth Amendment." *Id.* at 396, 109 S.Ct. 1865 (internal quotation marks and citation omitted).

Under this "objective reasonableness" standard, a finding by a jury long after the fact that an arrest lacked probable cause would be irrelevant to an excessive force analysis, as the dispositive inquiry would have to focus on whether it was reasonable *at the time of the arrest* for the officer to believe that he was justified in using the particular amount of force in question to effectuate what he believed to be a lawful

arrest. Any other rule would result in a double penalty against an officer for making an arrest that was later determined to lack probable cause—a sanction for the false arrest and a further sanction for the use of even de minimis force in making a false arrest. Without clear authority from the Second Circuit or this district supporting such a rule, the Court finds that it was proper to leave it out of the jury charge given in this case.

Finally, even if it were error for the Court not to have instructed the jury that an arrest found to lack probable cause makes any force used in conjunction with that arrest excessive, such an error would not be the kind of "fundamental" error requiring a new trial because, based on the facts as found by the jury at trial, Defendants would have been entitled to qualified immunity on this claim as well. That is, it would not have been "clear to a reasonable officer" that grabbing Plaintiff and twisting his arm to place him in handcuffs was "unlawful in the situation [Defendants] confronted." *Saucier*, 533 U.S. at 202, 121 S.Ct. 2151. Thus, a new trial is not warranted on this claim.

### B. Closing Arguments on Punitive Damages

▆ Plaintiff argues that he is entitled to a new trial on damages due to the Court's refusal to allow him to present closing arguments to the jury on the issue of punitive damages. There is no merit to this claim, as the Court did not deny Plaintiff the opportunity to argue the issue of punitive damages in his closing argument before the jury and Plaintiff's counsel did, in fact, include an argument for punitive damages in his summation. (Tr. 832–33.) The trial transcript makes clear that, while the Court initially stated that it would charge the issue of punitive damages only if the jury came back with a verdict and awarded compensatory damages, the Court later noted that this would require

giving the parties an additional opportunity to sum up regarding punitive damages and *granted the request of Plaintiff's counsel* to charge everything together. (Tr. 803–04, 918–19.) After the jury came back with a verdict and an award of compensatory damages, the Defendants gave additional testimony regarding their ability to pay any award of punitive damages returned against them, and the Court thereafter gave a supplemental charge. The Court's issuance of an additional charge on punitive damages did not entitle Plaintiff to an additional opportunity to argue the issue to the jury above and beyond what he had been provided at trial. Thus, there is no basis for granting a new trial on this claim.

### CONCLUSION

As the Defendants are entitled to qualified immunity on the false arrest and malicious prosecution claims, and as Plaintiff has failed to demonstrate the existence of any errors requiring a new trial, Defendants' motion for judgment as a matter of law is granted and Plaintiff's claims are dismissed.

SO ORDERED.